STATE OF NEBRASKA, APPELLANT, V.
DAVID CONTRERAS, APPELLEE.
688 N.W.2d 580

Filed November 5, 2004.    No. S-04-273.

Kay E. Tracy, Deputy Hall County Attorney, for appellant.

Jay B. Judds, of Milner, Neuhaus & Judds, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

In this error proceeding brought by the State pursuant to Neb. Rev. Stat. § 29-2315.01 (Supp. 2003), we are primarily asked to provide an answer to the question whether it is proper for the trial court to include an aiding and abetting instruction in its charge to the jury where the charging document does not specifically recite aiding and abetting language. We conclude that it is proper to give an aiding and abetting instruction where warranted by the evidence, notwithstanding the fact that the document charging the defendant does not include aiding and abetting language. In the

instant case, the trial court refused to so instruct the jury and the State takes exception thereto. We sustain the State's exceptions.

## STATEMENT OF FACTS

On the evening of February 28, 2003, David Contreras and Ricardo Orozco were drinking beer and driving around Grand Island in a black Ford Explorer. According to certain witnesses, there was an unidentified third person in the Explorer. Contreras and Orozco came upon a group of people in the parking lot of a gas and convenience store. The occupants of the Explorer became involved in a verbal altercation with the group in the parking lot, and beer bottles were thrown between the two groups. Contreras and Orozco left the parking lot, and witnesses testified that as they left, Contreras shouted that they were going to come back.

Orozco refused to testify at Contreras' trial, but a Grand Island police officer testified regarding statements Orozco made after his arrest. Orozco told police that after he and Contreras left the convenience store, they went to Orozco's brother-in-law's house to get a gun. They then drove to a residence where they believed there would be people who had been involved in the earlier incident. They saw no one at that residence, but continued driving and saw some people in front of a nearby residence who they thought were part of the rival group. This group included Joseph Reha, the victim. Orozco told police that they thought that individuals in this group had "flashed a gun" and that at that point, Contreras fired two or three rounds out the Explorer's window. The gun then jammed, so they drove around the block, and when they returned there was no one outside. They continued driving back to the convenience store and, seeing no one there, drove to an automobile repair shop. Orozco told police that they saw a man from the rival group at the repair shop, that the man pointed a rifle at them, and that Contreras rolled down the window and fired three rounds. They drove off and disposed of the gun. They then were stopped by police while driving toward Orozco's home. The police officer who made the stop testified that only two people emerged from the Explorer and that Contreras came out of the passenger side. An empty, fired casing was found in the back seat of the Explorer.

In addition to the police officer's testimony recounting Orozco's statements, several witnesses to the incidents testified at trial. The

witnesses were generally able to identify Contreras as having been located in the back seat of the Explorer during the incident at the convenience store. The witnesses also generally testified that shots were fired from the Explorer during the later incidents at the residence and at the automobile repair shop. Certain witnesses specified that the shots were fired from the back seat. However, none of the witnesses were able to identify Contreras as the person who actually fired the shots from the Explorer.

In its opening statement, the State told the jury that one who aids and abets another to commit a crime may be found guilty as a principal and that "if you find that someone in that vehicle fired a gun with the appropriate intent and that the other people knew and aided in some way, then you can find them all guilty of the crime." At the jury instruction conference, Contreras objected to the State's proposed instruction regarding aiding and abetting on the ground that Contreras had been charged in the information as a principal and the information did not contain aiding and abetting language. The State's proposed instruction quoted Neb. Rev. Stat. § 28-206 (Reissue 1995) as follows: "A person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender." Contreras also moved for an order in limine to prevent the State from referring to aiding and abetting in its closing argument.

The district court refused the State's proposed instruction on aiding and abetting and granted Contreras' motion in limine with regard to the State's closing argument. According to the State's application for leave to docket an appeal, which appeal was approved by the district court pursuant to § 29-2315.01, the district court had refused the State's proposed instruction and granted Contreras' motion in limine for the reason that the information did not give Contreras adequate notice that the State planned to proceed under an aiding and abetting theory.

The jury found Contreras guilty of (1) attempted first degree assault (of Reha), (2) use of a weapon during the commission of an attempted felony assault, (3) one count of unlawful discharge of a firearm at an occupied building (the automobile repair shop), and (4) one count of use of a weapon to commit unlawful discharge. The jury found Contreras not guilty of (1) a second count of unlawful discharge of a firearm at an occupied building (the

residence), (2) a second count of use of a weapon to commit unlawful discharge, and (3) tampering with physical evidence. The district court entered judgment based on the jury's verdict, and on December 12, 2003, the court sentenced Contreras on the four convictions. On December 30, the State sought leave to docket an error proceeding under § 29-2315.01. The Nebraska Court of Appeals granted leave, and the error proceeding was thereafter moved to the docket of the Nebraska Supreme Court.

## ASSIGNMENTS OF ERROR

The State asserts that the district court erred in (1) refusing to give the State's proposed instruction on aiding and abetting and (2) granting Contreras' motion in limine and ordering the State to refrain from referring to aiding and abetting in its closing argument.

## SCOPE AND PURPOSE OF REVIEW IN ERROR PROCEEDINGS

The instant appeal is before this court as an error proceeding filed by the prosecuting attorney pursuant to § 29-2315.01, which states:

> The prosecuting attorney may take exception to any ruling or decision of the court made during the prosecution of a cause by presenting to the trial court the application for leave to docket an appeal with reference to the rulings or decisions of which complaint is made. . . . The prosecuting attorney shall then present such application to the appellate court within thirty days from the date of the final order.

■ The scope and purpose of appellate review in error proceedings are defined in Neb. Rev. Stat. § 29-2316 (Supp. 2003). The purpose of the review is to provide an authoritative exposition of the law to serve as precedent in future cases. *State v. Portsche*, 258 Neb. 926, 606 N.W.2d 794 (2000).

## STANDARD OF REVIEW

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Weaver*, 267 Neb. 826, 677 N.W.2d 502 (2004).

## ANALYSIS

Relying on statute and case law, the State takes exception to the rulings of the district court in which it refused to give the State's proposed instruction on aiding and abetting and in which it ordered the State to refrain from referring to aiding and abetting in its closing argument. Noting that § 28-206 abrogates the common-law distinction between the prosecution of a defendant as an aider or abettor as distinguished from a principal offender, the State argues that no additional language is required in the information to prosecute a defendant for aiding and abetting than is required to charge and prosecute a defendant as the principal.

In response, Contreras argues that where the information charging the defendant does not explicitly contain aiding and abetting language, a defendant is not put on notice that he or she may be tried as an aider or abettor rather than the principal and that an instruction and therefore a conviction on aiding and abetting deny the defendant due process. Because the position taken by Contreras ignores the aiding and abetting statute, § 28-206, and the import of our prior case law, we reject the argument advanced by Contreras. We agree with the State that no additional aiding and abetting language was required in the information and that because the evidence supported an instruction, the district court erred in refusing to instruct on aiding and abetting and additionally in ordering the State to refrain from referring to aiding and abetting in its closing argument. The State's exceptions are therefore sustained.

The aiding and abetting statute, § 28-206, provides that "[a] person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender." The State refers us to *Scharman v. State*, 115 Neb. 109, 111, 211 N.W. 613 (1926), in which this court considered a predecessor statute which provided that " '[w]hoever aids, abets, or procures another to commit any offense may be prosecuted and punished as if he were the principal offender.' " This court explained in *Scharman* that the intention of the Legislature in the enactment of the predecessor statute was

> to abrogate all distinction heretofore existing between such aider, abettor, or procurer and the one committing the act, and to provide that each should be prosecuted and punished

as principals; that is, that the words "prosecuted and punished," as used in such section, mean that the same rule as to the information, conduct of the case, as well as the punishment, heretofore applicable to principals, should thereafter govern such aiders, abettors, or procurers, and that no additional facts need be alleged in an information against an accessory before the fact than are required against his principal.

115 Neb. at 112, 211 N.W. at 614.

■ Subsequent to enactment of the current version of § 28-206, we recognized that "[t]he common-law distinction between principal and aider and abettor has been abolished; a person who aids, abets, procures, or causes another to commit any offense may be prosecuted as if he [or she] were the principal offender." *State v. Jackson*, 258 Neb. 24, 34, 601 N.W.2d 741, 750 (1999). We have also recently recognized that "[a]n information charging an aider and abettor of a crime need not include any additional facts than those necessary to charge the principal of the crime." *State v. Leonor*, 263 Neb. 86, 96, 638 N.W.2d 798, 807 (2002). We have also held that an aiding and abetting instruction "is usually proper where two or more parties are charged with commission of the offense" and that an aiding and abetting instruction is proper when warranted by the evidence. *State v. Marco*, 230 Neb. 355, 361, 432 N.W.2d 1, 6 (1988).

This court is aware of the difficulties that were engendered by the common-law distinction between principals and accessories in felony cases. See 2 Wayne R. LaFave, Substantive Criminal Law § 13.1(d) (2d ed. 2003) (listing difficulties such as historical necessity that principal must be convicted as prerequisite to conviction of accessory). However, the abrogation of the distinction between principal and aider or abettor eliminates such difficulties and, simply put, means that a person is legally accountable for the conduct of another when he or she participates in the commission of the crime. *Id.*, § 13.1(e). In this connection, we have stated that an individual is guilty as an aider or abettor where the evidence shows that the individual participated in the underlying crime through word, act, or deed. *State v. Marco, supra.*

■ Section 28-206 does not define a separate crime of aiding and abetting. By its terms, § 28-206 provides that a person who

aids or abets may be prosecuted and punished as if he or she were the principal offender. Given the provisions of § 28-206 and our previous constructions of this statute, an information charging a defendant with a specific crime gives the defendant adequate notice that he or she may be prosecuted for the crime specified or as having aided and abetted the commission of the crime specified. See *State v. Moore*, 250 Neb. 805, 553 N.W.2d 120 (1996), *disapproved on other grounds, State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000) (stating that due process notice requirement requires that language of statute and previous constructions of statute in existence at time of crime provide reasonable notice to person of ordinary intelligence of scope of criminal behavior reached by statute). The information in the present case charged Contreras with numerous crimes, including attempted assault in the first degree and associated use of a weapon, as well as unlawful discharge of a firearm at an occupied building and associated use of a weapon. The information coupled with the terms of § 28-206 and prior case law gave Contreras adequate notice that he could be prosecuted for aiding and abetting the commission of such crimes.

Given § 28-206 and our prior decisions that the information charging an aider and abettor of a crime need not include any additional facts other than those necessary to charge the principal of the crime and that an aiding and abetting instruction is proper where warranted by the evidence, we hold that notwithstanding the fact that the information charging the defendant does not contain specific aiding and abetting language, an aiding and abetting instruction is proper where warranted by the evidence.

Turning to the instant case, it is clear that the evidence presented warranted an aiding and abetting instruction. The testimony of various witnesses placed Contreras inside the vehicle from which the shots were fired, and various witnesses testified that Contreras was involved in the altercations that preceded the shootings. However, aside from the police officer's testimony regarding the content of Orozco's statements, no witness was able to identify Contreras as the specific person who fired the shots from the vehicle. Therefore, if the jury did not find that Contreras had actually fired the shots, the jury could nevertheless

have found that, through word, act, or deed, Contreras aided and abetted the person who actually fired the shots.

Whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. *State v. Weaver*, 267 Neb. 826, 677 N.W.2d 502 (2004). Because the evidence in this case supported an aiding and abetting instruction, the district court erred by refusing such instruction and by ordering the State to refrain from referring to aiding and abetting in its closing argument.

### EFFECT OF RULING

For the reasons above, we find merit in the State's exceptions to the district court's rulings. Disposition of the case is therefore governed by § 29-2316, which provides:

> The judgment of the court in any action taken pursuant to section 29-2315.01 shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy, but in such cases the decision of the appellate court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered or which may thereafter arise in the state. When the decision of the appellate court establishes that the final order of the trial court was erroneous and the defendant had not been placed legally in jeopardy prior to the entry of such erroneous order, the trial court may upon application of the prosecuting attorney issue its warrant for the rearrest of the defendant and the cause against him or her shall thereupon proceed in accordance with the law as determined by the decision of the appellate court.

The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution and the provisions of article I, § 12, of the Nebraska Constitution protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. *State v. Rhea*, 262 Neb. 886, 636 N.W.2d 364 (2001). Under Neb. Const. art. I, § 12, jeopardy attaches when a judge, hearing a case without a jury, begins to hear evidence as to the guilt or innocence of the defendant. *Id.* In a case tried to a jury, jeopardy attaches when the jury is empaneled and sworn. *Id.*

Because jeopardy attached with respect to the counts of which Contreras was acquitted, our decision will not affect the judgment of the district court with respect to those counts. However, we note that with respect to the counts of which Contreras was convicted, this court reversed, without opinion, such convictions in Contreras' direct appeal, see case No. S-03-1454, and those counts were remanded for a new trial. The decision herein determines the law to govern in such new trial and in any similar case which may be pending at the time this decision is rendered or which may thereafter arise in the state.

## CONCLUSION

We conclude that the district court erred by refusing to give an aiding and abetting instruction and by ordering the State to refrain from referring to aiding and abetting in its closing argument. We therefore sustain the State's exceptions.

EXCEPTIONS SUSTAINED.