276 Neb. 313
STATE OF NEBRASKA, APPELLANT,
v.
GLENN A. HENSE, APPELLEE.
No. S-07-875.
Supreme Court of Nebraska.
Filed August 1, 2008.
Gary Lacey, Lancaster County Attorney, and Krista Hendrick for appellant.
Dennis R. Keefe, Lancaster County Public Defender, Timothy M. Eppler, and Valerie R. McHargue, Senior Certified Law Student, for appellee.
MEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
Glenn A. Hense pled guilty to the felony charge of operating a motor vehicle in a period during which his license had been revoked. See Neb. Rev. Stat. § 60-6,197.06 (Cum. Supp. 2006). The district court for Lancaster County sentenced Hense to probation for 2 years but did not order a further revocation of his operator's license as part of the sentence. The State asserts that a 15-year revocation is mandatory under § 60-6,197.06. The State brought this error proceeding pursuant to Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 2006). The State takes exception to the district court's failure to impose a 15-year revocation of Hense's license. We sustain the State's exception; however, because of the limitations placed on the court under § 29-2315.01 and Neb. Rev. Stat. § 29-2316 (Cum. Supp. 2006), we conclude that Hense's sentence is not affected by our decision in this error proceeding.

STATEMENT OF FACTS
As a result of a conviction for driving under the influence, third offense, Hense's operator's license was revoked for a period of 15 years, which will end in 2012. On September 3, 2006, Hense was arrested for operating a motor vehicle during such period of revocation. Hense was charged with a Class IV felony, operating a motor vehicle during revocation, in viola tion of § 60-6,197.06. On February 13, 2007, he pled guilty to the charge.
The matter originally came on for sentencing on April 25, 2007. However, the district court continued sentencing until May 23 in order to allow the court to research and determine whether it was required under § 60-6,197.06 to revoke Hense's operator's license for 15 years as part of any sentence of probation that was to be imposed for the current offense of driving during revocation.
At the sentencing hearing, the court noted that prior to an amendment which became effective July 14, 2006, § 60-6,197.06 did not include language requiring license revocation as part of the sentence for a violation of the statute. The 2006 amendment added the following language:
[T]he court shall, as part of the judgment of conviction, revoke the operator's license of such person for a period of fifteen years from the date ordered by the court and shall issue an order pursuant to section 60-6,197.01. Such revocation and order shall be administered upon sentencing, upon final judgment of any appeal or review, or upon the date that any probation is revoked.
See 2006 Neb. Laws, L.B. 925, § 12.
The court concluded that § 60-6,197.06 does not mandate a 15-year revocation as part of an order of probation. In so concluding, the court focused on the last phrase of the statute stating that revocation is to be administered "upon the date that any probation is revoked." The court compared § 60-6,197.06 to another statute that specifically required that revocation be part of an order of probation, and the court concluded that the absence of such language in § 60-6,197.06 indicated that revocation was not required to be part of an order of probation under § 60-6,197.06. Based on such conclusion, the court sentenced Hense to probation for a period of 2 years but did not order a revocation of his operator's license as part of the sentence.
The State requested and the Nebraska Court of Appeals granted leave to file this appeal pursuant to § 29-2315.01. Hense sought to bypass the Court of Appeals, and we granted the petition to bypass.

ASSIGNMENT OF ERROR
The State asserts that the district court erred when it failed to impose a 15-year revocation of Hense's operator's license as part of the sentence for the offense of driving during a period of revocation. The State claims that such 15-year revocation is mandatory under § 60-6,197.06.

STANDARD OF REVIEW
[1] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. State v. Rodriguez-Torres, 275 Neb. 363, 746 N.W.2d 686 (2008).

ANALYSIS
Revocation Is Mandatory in a Conviction Under § 60-6,197.06.
The State asserts that the district court erred when it failed to impose a 15-year revocation of Hense's operator's license as part of his sentence of probation for having committed the offense of driving during a period of revocation. The State claims that revocation is mandatory under § 60-6,197.06 and that the district court erred when it concluded that § 60-6,197.06 does not require a 15-year revocation when a defendant is sentenced to probation. We agree with the State and conclude that a 15-year revocation is required to be imposed as part of any sentence for a conviction under § 60-6,197.06, including a sentence of probation.
[2-4] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. Rodriguez-Torres, supra. For a court to inquire into a statute's legislative history, the statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous. In re Interest of Destiny A. et al., 274 Neb. 713, 742 N.W.2d 758 (2008). A statute is ambiguous when the language used cannot be adequately understood either from the plain meaning of the statute or when considered in pari materia with any related statutes. Id.
[5] As noted above, the language of § 60-6,197.06 at issue in this case was added to the statute in 2006. The first sentence of the 2006 amendment provides that "the court shall, as part of the judgment of conviction [for felony operation of a motor vehicle during revocation], revoke the operator's license of such person for a period of fifteen years from the date ordered by the court and shall issue an order pursuant to section 60-6,197.01." (Emphasis supplied.) As a general rule, the word "shall" is considered mandatory and is inconsistent with the idea of discretion. State v. Pathod, 269 Neb. 155, 690 N.W.2d 784 (2005). Therefore, the plain and ordinary meaning of the first sentence is that it is mandatory that the court revoke the operator's license of a person convicted under the statute for 15 years and that the court does not have discretion as to whether or not it imposes such revocation. We note that the same sentence provides that such revocation is to be imposed "as part of the judgment of conviction." In a criminal case, the judgment is the sentence. State v. Vela, 272 Neb. 287, 721 N.W2d 631 (2006). Probation is a sentence. See, Neb. Rev. Stat. § 29-2246(4) (Cum. Supp. 2006) (defining "[probation" as a sentence); Neb. Rev. Stat. § 29-2260(4) (Reissue 1995) (providing that when convicted offender is not sentenced to imprisonment, court may sentence him or her to probation). Therefore, the "judgment of conviction" as used in § 60-6,197.06 encompasses an order imposing probation. The first sentence of the 2006 amendment to § 60-6,197.06 does not contain language limiting its effect to specific types of judgments or excluding judgments that include an order of probation. Examination of the first sentence of § 60-6,197.06, standing alone, indicates that a 15-year period of revocation is required to be imposed as part of the sentence of probation for a violation of § 60-6,197.06.
Although the first sentence of the amendment is clear in itself, the amendment, when read as whole, may reasonably be considered ambiguous, because the second sentence of § 60-6,197.06 provides that the revocation "shall be administered upon sentencing, upon final judgment of any appeal or review, or upon the date that any probation is revoked." (Emphasis supplied.) Language that the revocation is to be administered upon, inter alia, "the date that any probation is revoked" could be read to imply that revocation is not required to be a part of an order of probation and that instead, revocation is to be imposed only when probation has been revoked. The statute can reasonably be considered ambiguous, because although the first sentence of the amendment states that a 15-year revocation must be part of a judgment of conviction, the second sentence of the amendment implies that a 15-year revocation would not necessarily be part of a judgment of conviction that orders probation, but, rather, must be administered upon the revocation of probation.
Because the amended portion of § 60-6,197.06 is ambiguous, we look to the legislative history of the amendment. The 2006 amendment was part of L.B. 925, which contained amendments to various laws relating to driving under the influence (DUI). The Introducer's Statement of Intent stated that the bill sought, inter alia, "to strengthen and clarify certain portions of Nebraska's existing DUI and DUI related laws." Judiciary Committee, 99th Leg., 2d Sess. (Jan. 19, 2006). The Statement of Intent specifically noted that the bill "[r]equires the imposition of a fifteen (15) year license revocation as part of any sentence for felony Operation of a Motor Vehicle During Suspension." Id. At the committee hearing on L.B. 925, the senator who introduced the bill commented that the bill "requires the imposition of a 15-year license revocation as part of any sentence for felony operation of a motor vehicle during suspension." Judiciary Committee Hearing, 99th Leg., 2d Sess. 22 (Jan. 19, 2006). The legislative history therefore evinces the intent that a 15-year revocation was to be part of "any sentence" imposed under § 60-6,197.96. We read the broad reference to "any sentence" to include a sentence of probation, and we find nothing in the legislative history indicating that revocation was not intended to be required when the sentence for felony operation of a motor vehicle during revocation is probation.
[6] The first sentence ofthe amended language of § 60-6,197.06 provides that the court "shall" revoke the defendant's license "for a period of fifteen years" as part of the "judgment of conviction" under the statute. To the extent the second sentence of the amendment makes the statute ambiguous, the legislative history of the amendment indicates that the intent was that a revocation would be part of "any sentence" for a conviction under the statute, including a sentence of probation. We conclude that § 60-6,197.06 requires that a 15-year revocation be part of any sentence for a conviction under the statute, including a sentence of probation. The district court's conclusion to the contrary was error. The court in this case did not have discretion under the statute as to whether or not it could impose such revocation, and therefore the court erred when it failed to impose a 15-year revocation of Hense's operator's license. The State's exception to the district court's sentencing order has merit and is sustained.
Effect of Ruling.
[7] We have found merit in the State's exception to the district court's sentencing order, and we must now proceed to determine the effect of our conclusion on the sentence in the instant case. The State brought the present appeal as an error proceeding pursuant to § 29-2315.01. Section 29-2315.01 permits the State to take exception to trial court decisions. We have noted that the purpose of appellate review in error proceedings is to provide an authoritative exposition of the law to serve as precedent in future cases. State v. Contreras, 268 Neb. 797, 688 N.W.2d 580 (2004). Because the State brought this appeal as an error proceeding, disposition of this case and specifically whether our reading of § 60-6,197.06 will permit imposition of a 15-year revocation on Hense is governed by § 29-2316, which provides:
The judgment of the court in any action taken pursuant to section 29-2315.01 shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy, but in such cases the decision of the appellate court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered or which may thereafter arise in the state. When the decision of the appellate court establishes that the final order of the trial court was erroneous and the defendant had not been placed legally in jeopardy prior to the entry of such erroneous order, the trial court may upon application of the prosecuting attorney issue its warrant for the rearrest of the defendant and the cause against him or her shall thereupon proceed in accordance with the law as determined by the decision of the appellate court.
[8,9] We noted in State v. Vasquez, 271 Neb. 906, 914, 716 N.W2d 443, 451 (2006), that the "application of § 29-2316 turns on whether the defendant has been placed in jeopardy by the trial court, not by whether the Double Jeopardy Clause bars further action." We therefore concluded that even though modifying a sentence on review does not violate constitutional principles of double jeopardy, because of the language of § 29-2316, a Nebraska appellate court does not have authority to modify a sentence in an error proceeding when the defendant has been "placed legally in jeopardy." Vasquez, supra. Jeopardy attaches (1) in a case tried to a jury, when the jury is impaneled and sworn; (2) when a judge, hearing a case without a jury, begins to hear evidence as to the guilt of the defendant; or (3) at the time the trial court accepts the defendant's guilty plea. Id. In Vasquez, we determined that the defendant had been placed in legal jeopardy when the trial court accepted her guilty plea and that therefore, our decision in the error proceeding could not affect her sentence.
We note that the reasoning in Vasquez appears to contradict the reasoning in certain prior cases. In State v. Neiss, 260 Neb. 691, 619 N.W.2d 222 (2000), we were required to apply the language of Neb. Rev. Stat. § 29-2319(1) (Reissue 1995), which is virtually identical to § 29-2316 at issue herein except that § 29-2319(1) relates to error proceedings taken from a county court to a district court pursuant to Neb. Rev. Stat. § 29-2317 (Reissue 1995). In Neiss, we ruled that the district court did not err in an error proceeding before it involving a sentence enhancement proceeding, when it reversed the judgment of the county court and remanded the case to the county court to resentence the defendant. In reaching this conclusion, we stated that "the protections afforded by § 29-2319 are no greater than or different from the double jeopardy protections afforded by the U.S. and Nebraska Constitutions." 260 Neb. at 701, 619 N.W.2d at 230. Given our statement, we reasoned that because resentencing was not barred by the Double Jeopardy Clause, it was also not barred by § 29-2319.
We based the reasoning in Neiss in part on two earlier cases applying § 29-2316, State v. Wren, 234 Neb. 291, 450 N.W2d 684 (1990), and State v. Schall, 234 Neb. 101, 449 N.W2d 225 (1989). In both Wren and Schall, brought to this court by the State as error proceedings pursuant to § 29-2315.01, this court determined that because double jeopardy considerations do not prohibit review of a sentence, the defendants in each case had not been "placed legally in jeopardy" within the meaning of § 29-2316 with respect to the sentence that was at issue imposed and that therefore, § 29-2316 did not prohibit an appellate court from affecting the sentence imposed. In Wren, this court remanded the cause to the district court for resentencing because the district court lacked statutory authority to impose the sentence it had imposed. In Schall, this court remanded the cause to the district court to reinstate and affirm a sentence that the county court had imposed and that the district court had erroneously reversed.
In State v. Vasquez, 271 Neb. 906, 716 N.W2d 443 (2006), we did not cite to or discuss Neiss, Wren, Schall, or other similar cases. However, our statement in Vasquez that "the application of § 29-2316 turns on whether the defendant has been placed in jeopardy by the trial court, not by whether the Double Jeopardy Clause bars further action," 271 Neb. at 914, 716 N.W.2d at 451, demonstrates that we considered and rejected equating the phrase "placed legally in jeopardy" in § 29-2316 with constitutional double jeopardy, and appears to contradict our earlier statement in Neiss that "the protections afforded by § 29-2319 are no greater than or different from the double jeopardy protections afforded by the U.S. and Nebraska Constitutions," 260 Neb. at 701, 619 N.W.2d at 230, as well as similar statements in Wren and Schall regarding the application of § 29-2316. Although jurisprudence related to double jeopardy may inform determinations as to whether a defendant has been "placed legally in jeopardy" under § 29-2316, see State v. Contreras, 268 Neb. 797, 688 N.W.2d 580 (2004), and State v. Falcon, 260 Neb. 119, 615 N.W.2d 436 (2000), we believe, consistent with Vasquez, that the analysis under § 29-2316 is not a double jeopardy analysis, but instead is a question of whether further action is permissible under the terms of § 29-2316. Of course, an appellate ruling must not violate double jeopardy protections, but the fact that double jeopardy is not violated does not necessarily mean that further action is permitted by § 29-2316.
Absent specific statutory authorization, the State, as a general rule, has no right to appeal an adverse ruling in a criminal case. Vasquez, supra; In re Interest of Sean H., 271 Neb. 395, 711 N.W.2d 879 (2006). Certain exceptions from this general rule are permitted by statute, but because such statutes are penal statutes, they are to be strictly construed against the government. See State v. Banes, 268 Neb. 805, 688 N.W.2d 594 (2004). In the instant case, the State appealed the district court's decision under § 29-2315.01, which provides one such exception. Another exception is found in Neb. Rev. Stat. § 29-2320 (Cum. Supp. 2006), under which the prosecuting attorney may appeal a sentence imposed in a felony case when he or she reasonably believes the sentence is excessively lenient. Under Neb. Rev. Stat. § 29-2323 (Reissue 1995), the Legislature has specifically granted the court authority to set aside an excessively lenient sentence and either impose a greater sentence or remand the cause. The State chose not to proceed under the excessively lenient statutes in this felony matter. We must, therefore, analyze the effect of our ruling on Hense's sentence under § 29-2315.01 and the related provision in § 29-2316.
Given the statutory constraints attendant to our analysis, the inquiry is whether the defendant has been "placed legally in jeopardy," as that phrase is used in the error proceeding statute § 29-2316. If the defendant has been placed legally in jeopardy, then § 29-2316 requires that the judgment, of which a sentence is a part, "shall not be reversed nor in any manner affected" by the decision of the appellate court. For completeness, we note that in § 29-2316, the statute does permit further proceedings at the trial level, but this is limited to "[w]hen the decision of the appellate court establishes that the final order of the trial court was erroneous and the defendant had not been placed legally in jeopardy prior to the entry of such erroneous order. . . ." (Emphasis supplied.) This language in § 29-2316 anticipates a circumstance which is unlike the instant case. In our case, jeopardy attached prior to an erroneous ruling, and further proceedings affecting the judgment are not proper under § 29-2316.
Given our reasoning that the effect of our ruling in the instant case is controlled by the strictures of the error proceeding statutes, and noting parenthetically that our reading of § 29-2316 while not performed under a double jeopardy analysis does not offend double jeopardy protections, we conclude that our analysis in State v. Vasquez, 111 Neb. 906, 716 N.W.2d 443 (2006), was a proper statement of the law. We therefore determine that our decision in Vasquez overruled State v. Neiss, 260 Neb. 691, 619 N.W2d 222 (2000); State v. Wren, 234 Neb. 291, 450 N.W2d 684 (1990); State v. Schall, 234 Neb. 101, 449 N.W2d 225 (1989); and other similar cases to the extent the reasoning in those cases differed from that in Vasquez.
Similar to Vasquez, in the present case, jeopardy attached when the district court accepted Hense's guilty plea. Because Hense was "placed legally in jeopardy," under § 29-2316, our decision in this error proceeding cannot affect the judgment of the district court, including the sentence imposed. The decision herein determines the law to govern in any similar case which may be pending at the time this decision is rendered or which may thereafter arise in the state, but it does not affect the sentence imposed on Hense.

CONCLUSION
We conclude that § 60-6,197.06 requires that a 15-year revocation be part of any sentence for a conviction for felony operation of a motor vehicle during revocation under that statute, including a sentence of probation. The court in this case therefore erred when it failed to impose a 15-year revocation; however, given the statutory constraints of § 29-2316, Hense's sentence is not affected by our decision in this error proceeding.
EXCEPTION SUSTAINED.
GERRARD, J., concurring in part, and in part dissenting.
While I recognize the tension between State v. Vasquez[1] and the line of cases preceding it,[2] our premise in Vasquez (which I now believe to be mistaken) is not sufficient justification for upsetting nearly 20 years of well-settled statutory construction. Therefore, while I agree with the majority's conclusion that the district court's sentencing order was erroneous, I dissent from the majority's conclusion that the defendant cannot be resen-tenced pursuant to Neb. Rev. Stat. §§ 29-2315.01 and 29-2316 (Cum. Supp. 2006).
Section 29-2316 provides that the judgment of the district court, in an error proceeding brought by the State, "shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy."[3] In State v. Neiss,[4] we explained our basis for concluding that the protections afforded by that language "are no greater than or different from the double jeopardy protections afforded by the U.S. and Nebraska Constitutions." We relied on our construction of that language in State v. Schall[5] and State v. Wren,[6] and invoked the familiar proposition that where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent.[7] We found nothing in the legislative history or the actions of the Legislature to undermine our established rule that the phrase "`placed legally in jeopardy'" was intended only "to prevent offenders from being subjected to double jeopardy."[8] And we expressly rejected the argument, now endorsed by the majority, that the statutory language required analysis under something other than double jeopardy principles.[9]
That conclusion sensibly permitted the adjustment of a sentence that had been based on an incorrect legal ruling, such as in this case. As the U.S. Supreme Court has explained, double jeopardy protections are inapplicable to sentencing proceedings, because the determinations at issue do not place a defendant in jeopardy for an offense.[10] And although the majority suggests that the State could have appealed the defendant's sentence in this case pursuant to Neb. Rev. Stat. § 29-2320 (Cum. Supp. 2006), we have explained that a prosecutor's authority under that section is limited to "cases where the prosecutor reasonably believes that the sentence is excessively lenient" and "does not extend to the appeal of a sentence that is not in conformity with the law."[11] Our decision in Neiss, and the cases preceding it, persuasively concluded that the Legislature intended for erroneous sentences to be correctible through error proceedings, consistent with double jeopardy principles.
Nothing that has happened in the Legislature since Neiss undermines its reasoning. In fact, § 29-2316 has been amended three times since our decision in Schall, and each time, the statute has been repealed and reenacted without changing the language at issue.[12] Generally, it is presumed that when a statute has been construed by this court, and the same is substantially reenacted, the Legislature gave to the language the significance previously accorded to it by this court.[13] If the Legislature had disagreed with our construction of the statute, it could have changed the language at issue instead of reenacting it.
For example, in 2002, §§ 29-2315.01 and 29-2316 only permitted a "county attorney" to take exception to a decision of the trial court.[14] So, in State v. Jones,[15] we held that those statutes only applied to county attorneys, and did not authorize an error proceeding by a city attorney representing the State. In the next legislative session, the Legislature fixed the problem by amending §§ 29-2315.01 and 29-2316 to authorize an error proceeding by any "prosecuting attorney."[16] The Legislature expressly clarified that a "prosecuting attorney" includes a city attorney.[17] And the Legislature reenacted the restriction on affecting a judgment after the defendant has been placed "legally in jeopardy,"[18] while presumably aware of what we had construed that language to mean in Neiss, Wren, and Schall.[19]
If we had somehow misinterpreted § 29-2316 all that time, the Legislature could have changed it. The Legislature still could. Admittedly, the doctrine of legislative acquiescence is not without limitations.[20] But it, and the doctrine of stare decisis, are entitled to great weightparticularly in cases involving statutory interpretation. Absent a reason why our decisions in Griffin, Neiss, Wren, and Schall[21] were manifestly wrong,[22] I would continue to follow them, as the Legislature has done for the better part of two decades. I would remand this cause for resentencing, and dissent to the extent that the majority opinion holds otherwise.
HEAVICAN, C.J., and Stephan, J., join in this concurrence and dissent.
NOTES
[1] State v. Vasquez, 271 Neb. 906, 716 N.W.2d 443 (2006).
[2] See, State v. Griffin, 270 Neb. 578, 705 N.W.2d 51 (2005); State v. Neiss, 260 Neb. 691, 619 N.W.2d 222 (2000); State v. Wren, 234 Neb. 291, 450 N.W.2d 684 (1990); State v. Schall, 234 Neb. 101, 449 N.W.2d 225 (1989).
[3] See, also, Neb. Rev. Stat. § 29-2319 (Cum. Supp. 2006) (containing identical language).
[4] Neiss, supra note 2, 260 Neb. at 701, 619 N.W.2d at 230.
[5] Schall, supra note 2.
[6] Wren, supra note 2.
[7] Neiss, supra note 2.
[8] Id. at 701, 619 N.W.2d at 230, quoting §§ 29-2316 and 29-2319.
[9] Id.
[10] Monge v. California, 524 U.S. 721, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998).
[11] Glantz v. Hopkins, 261 Neb. 495, 500, 624 N.W.2d 9, 13 (2001).
[12] See, 2003 Neb. Laws, L.B. 17; 1992 Neb. Laws, L.B. 360; 1991 Neb. Laws, L.B. 732.
[13] Brown v. Kindred, 259 Neb. 95, 608 N.W.2d 577 (2000).
[14] See Neb. Rev. Stat. § 29-2315.01 and 29-2316 (Reissue 1995).
[15] See State v. Jones, 264 Neb. 812, 652 N.W.2d 288 (2002).
[16] 2003 Neb. Laws, L.B. 17.
[17] See, id.; Neb. Rev. Stat. § 29-2315 (Cum. Supp. 2006).
[18] 2003 Neb. Laws, L.B. 17, §§ 12 and 14.
[19] See Neiss, supra note 2.
[20] See, e.g., Bronsen v. Dawes County, 272 Neb. 320, 722 N.W.2d 17 (2006).
[21] Griffin, supra note 2; Neiss, supra note 2; Wren, supra note 2; Schall, supra note 2.
[22] See Bronsen, supra note 20.