767 N.W.2d 775 (2009)
278 Neb. 98
STATE of Nebraska, appellant,
v.
Joaquin FIGEROA, also known as Mario Santa Maria, also known as Jose Alonzo, appellee.
No. S-08-848.
Supreme Court of Nebraska.
July 10, 2009.
*777 Kimberly M. Watson, Dakota County Attorney, for appellant.
Dennis R. Hurley, of Hurley Law Offices, South Sioux City, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
Joaquin Figeroa, also known as Mario Santa Maria or Jose Alonzo, appeared pro se in the county court for Dakota County, Nebraska, and pled guilty to false reporting and resisting arrest, both Class I misdemeanors.[1] Figeroa was ordered to pay costs of $44, and he was sentenced to 250 days in county jail for the false reporting conviction and to 1 year in the Department of Correctional Services for the resisting arrest conviction, running consecutively. Figeroa appealed his convictions to the district court, and the district court reversed. The district court concluded that *778 the county court had failed to adequately inform Figeroa of his right to counsel. Accordingly, the district court remanded the matter to the county court for further proceedings and ordered the county court to strike the guilty plea and reverse Figeroa's judgment and sentences. The State brought this error proceeding pursuant to Neb.Rev.Stat. § 29-2315.01 (Reissue 2008).

BACKGROUND
Figeroa appeared without counsel at a group arraignment in the county court for Dakota County and was informed of his constitutional rights. The court said in relevant part: "You have the right to an attorney of your own choice at your own expense. If you cannot afford one, the Court can appoint an attorney for you at public expense." After the court completed the general rights advisory, Figeroa was individually advised of the nature of his charges and the possible penalties. The court asked Figeroa if he heard and understood the rights given to the group, and Figeroa said that he heard and understood his rights. The following conversation took place:
THE COURT: As for an attorney, do you wish to request counsel at public expense if you cannot afford one, hire your own at your own expense, or proceed without one?
[Figeroa]: Proceed without one.
THE COURT: Did anyone promise you anything or threaten you in any way in order to get you to do that?
[Figeroa]: No, sir.
THE COURT: Are you currently under the influence of alcohol or drugs?
[Figeroa]: No, sir.
Based on this conversation, the court concluded that Figeroa knowingly waived his right to counsel and allowed him to proceed pro se. The record reflected that Figeroa was a convicted felon and had an extensive criminal history.
Ultimately, Figeroa pled guilty and was sentenced. On February 13, 2008, Figeroa filed his notice of appeal to the district court for Dakota County, asserting as error, among other things, that he did not knowingly, intelligently, and voluntarily waive his right to an attorney. Figeroa argued that he was not adequately informed of his right to counsel, because the court's use of the word "can" implied that the court was not required to appoint counsel, at the State's expense, even if Figeroa was unable afford to secure his own.
The district court for Dakota County, acting as an intermediate appellate court, entered an order reversing Figeroa's judgment and sentences, based on Figeroa's assigned error that he did not knowingly, voluntarily, and intelligently waive his right to counsel. The district court concluded that Figeroa was not informed of his constitutional right to counsel, because the county court's statement that "[i]f you cannot afford one, the Court can appoint an attorney for you at public expense" was misleading. Accordingly, the district court ordered that the guilty plea be stricken and that the judgment and sentences of the county court be reversed, and the matter remanded for further proceedings. The district court did not make any determinations regarding Figeroa's remaining assignments of error. The State brought this error proceeding pursuant to § 29-2315.01.

ASSIGNMENT OF ERROR
The State argues that the district court erred in concluding that the county court failed to sufficiently advise Figeroa of his constitutional right to legal counsel at public expense.

*779 STANDARD OF REVIEW
[1] In determining whether a defendant's waiver of counsel was voluntary, knowing, and intelligent, an appellate court applies a "clearly erroneous" standard of review.[2]

ANALYSIS
[2,3] The State requests that this court reverse the district court's order and affirm the county court's judgment and sentences. Absent specific statutory authorization, the State, as a general rule, has no right to appeal an adverse ruling in a criminal case.[3] In the present case, the State appealed the district court's decision under § 29-2315.01, which provides one exception to the general rule. Section 29-2315.01 allows the county attorney to request appellate review of an adverse decision or ruling in a criminal case in district court after a final order or judgment in the criminal case has been entered, but § 29-2315.01 does not allow an appellate court to review issues upon which no ruling was made.[4] The purpose of appellate review pursuant to § 29-2315.01 is to provide an authoritative exposition of the law to serve as precedent in future cases.[5]
[4] Because the State brought this appeal as an error proceeding, disposition of this case is governed by Neb.Rev.Stat. § 29-2316 (Reissue 2008). Section 29-2316 provides:
The judgment of the court in any action taken pursuant to section 29-2315.01 shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy, but in such cases the decision of the appellate court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered or which may thereafter arise in the state. When the decision of the appellate court establishes that the final order of the trial court was erroneous and the defendant had not been placed legally in jeopardy prior to the entry of such erroneous order, the trial court may upon application of the prosecuting attorney issue its warrant for the rearrest of the defendant and the cause against him or her shall thereupon proceed in accordance with the law as determined by the decision of the appellate court.
In State v. Vasquez,[6] we held that jeopardy attaches (1) in a case tried to a jury, when the jury is impaneled and sworn; (2) when a judge, hearing a case without a jury, begins to hear the evidence as to the guilt of the defendant; or (3) at the time the trial court accepts the defendant's guilty plea.
[5] In the present case, jeopardy attached when the county court accepted Figeroa's guilty plea; thus, we are unable, under § 29-2316, to reinstate Figeroa's judgment and sentences, regardless of the outcome of this case. In other words, our decision in this error proceeding cannot affect the judgment of the district court. However, our decision determines the law to govern in any similar cases now pending or that may subsequently arise.
*780 [6] The sole issue presented by the parties in this appeal is whether Figeroa knowingly, voluntarily, and intelligently waived his right to counsel before the county court. The State argues that Figeroa was sufficiently advised and aware of his constitutional right to counsel. The State argues that the county court's use of the word "can" was appropriate, because the court is not required to appoint counsel if the defendant has sufficient funds to hire his own. Thus, the State maintains that Figeroa knowingly and intelligently waived his right to counsel and exercised his right of self-representation. On the record before us, we conclude that the county court did not err in concluding that Figeroa's waiver of counsel was knowing, voluntary, and intelligent.
[7-9] A defendant may waive the constitutional right to counsel, so long as the waiver is made knowingly, voluntarily, and intelligently.[7] We have explained that formal warnings do not have to be given by the trial court to establish a knowing, voluntary, and intelligent waiver of the right to counsel.[8] In other words, a formalistic litany is not required to show such a waiver was knowingly and intelligently made.[9]
[10-14] Instead, when considering whether a defendant voluntarily, knowingly, and intelligently waived his right to counsel, we review the totality of the circumstances appearing in the record.[10] We employ a two-step analysis to determine whether a defendant should be allowed to waive counsel. First, we consider whether the defendant was competent to waive counsel, and second, we consider whether the defendant has voluntarily, knowingly, and intelligently waived counsel.[11] The dispositive inquiry is whether the defendant was sufficiently aware of the right to have counsel and of the possible consequences of a decision to proceed without counsel.[12] Consideration may be given to a defendant's familiarity with the criminal justice system.[13] A waiver of counsel need not be prudent, just knowing and intelligent.[14]
The district court did not find, and Figeroa does not argue, that his waiver of counsel was involuntary, nor does he argue that he was incompetent. The record does not reveal any reason why the court should doubt Figeroa's competence to waive counsel. As such, we conclude that Figeroa was competent to waive counsel.[15]
But the district court concluded that Figeroa's waiver was not knowing and intelligent, because the county court, by using the word "can" instead of "will,"
gave [Figeroa] the impression that if the court, in an expansive manifestation of magnanimity were to feel like appointing an attorney to represent defendant, or wanted to do so, or thought that it might be an acceptable idea to do so, then the court would not be prohibited from doing so.
Thus, the district court found that Figeroa was not adequately aware of his right to counsel.
*781 A similar argument was rejected in State v. Fernando-Granados.[16] In that case, the defendant was advised, "`"[Y]ou have the right to consult with a lawyer and have a lawyer present with you during questioning."'"[17] He was then advised, "`[I]f [you do] not have the money to pay for a lawyer the Court [could, may, can] ha[s] the ability to appoint one.'"[18] We concluded that reading the two warnings together, the defendant was clearly advised of his right to have an attorney present during questioning. We reasoned, "Although the phrase `will appoint' was not used, the advisement was nevertheless sufficient to reasonably inform him of his right to an attorney, and to apprise him that a method, i.e., appointment by the court, existed for ensuring that an attorney was available to him."[19] We concluded, "The challenged warning ... was sufficient to accomplish what the U.S. Supreme Court stated as its purpose, namely, to prevent a misunderstanding that the right to consult a lawyer is conditioned upon having the funds to obtain one."[20]
In the present case, Figeroa was both advised of his right to counsel and questioned regarding his knowledge of that right. Specifically, the county court stated, "If you cannot afford [an attorney], the Court can appoint an attorney for you at public expense." Figeroa was later asked if he understood his rights, to which he stated he did. The court again inquired, "As for an attorney, do you wish to request counsel at public expense if you cannot afford one, hire your own at your own expense, or proceed without one?" Not only did Figeroa's answers indicate that he was aware of his constitutional right to counsel, but the two admonitions, read together, made it sufficiently clear that an attorney would be provided to Figeroa in the event that he was not financially able to obtain his own.
Read together, the two admonitions, considered in conjunction with Figeroa's experience with the criminal justice system, were sufficient to make Figeroa aware of his constitutional right to counsel.[21] Thus, the county court's finding that Figeroa was aware of his constitutional right to counsel and thus voluntarily, knowingly, and intelligently waived that right was not clearly erroneous, and the State's exception to the district court's order has merit and is sustained.

CONCLUSION
Considering the totality of the circumstances, we find no error in the county court's warnings and we conclude that the county court did not clearly err in concluding that Figeroa knowingly, voluntarily, and intelligently waived his right to counsel. Thus, the district court erred in not affirming the county court's judgment and sentences. The State's exception is sustained; however, the limitations of § 29-2316 preclude this court from reinstating Figeroa's judgment and sentences, despite the district court's error.
EXCEPTION SUSTAINED.
GERRARD, J., concurring in part, and in part dissenting.
I agree with the majority's conclusion that pursuant to State v. Fernando-Granados,[1] *782 the district court erred in concluding that Figeroa was not effectively informed of his constitutional right to counsel. But I disagree with the conclusion that the county court's convictions and sentences cannot be reinstated pursuant to Neb.Rev.Stat. § 29-2316 (Reissue 2008). I recognize that this court's decision in State v. Vasquez[2] is factually on point. But I would follow our prior holdings in State v. Griffin,[3]State v. Neiss,[4] and State v. Schall[5] and reinstate the county court's judgment. I respectfully dissent from the majority's conclusion to the contrary.
The majority relies on its holding in State v. Hense[6] that whether a defendant "has been placed legally in jeopardy" within the meaning of § 29-2316 does not depend on double jeopardy analysis. But for nearly 20 years before that, we had held  without amendment from the Legislature  that the Legislature intended for errors to be correctible through error proceedings consistent with double jeopardy principles.[7] And it is also well established that while a penal statute is given a strict construction, it should be given a construction which is sensible and prevents injustice or an absurd consequence.[8] We should try to avoid a statutory construction which would lead to an absurd result.[9] The result in this case is unjust and impractical.
We have concluded, as a matter of law, that Figeroa was correctly informed of his rights and knowingly, intelligently, and voluntarily pled guilty to the offenses with which he was charged. In other words, Figeroa was convicted and sentenced in a fair and lawful proceeding, yet, under this court's interpretation of § 29-2316, we are apparently prohibited from affirming the result of that proceeding. And the court's construction of the prohibition against reversing the district court's judgment "when the defendant in the trial court has been placed legally in jeopardy"[10] results in the defendant in this case facing more jeopardy. Prosecutorial and judicial resources will be wasted providing Figeroa with a new trial to which he is not entitled  in order to "protect" his right to be free from being tried twice for the same offense. This does not make sense.
As I explained in my dissenting opinion in Hense, I believe that § 29-2316 incorporates double jeopardy principles[11] and permits reversal of the district court's judgment where double jeopardy would not preclude it.[12] That reading of § 29-2316 is *783 even more sensible where, as here, the district court is acting as an intermediate appellate court, and the only effect of reversing the district court's judgment is to affirm the valid convictions and sentences. It is well established that under the Double Jeopardy Clause, an appellate court's order reversing a conviction is subject to further review.[13] And that was precisely the conclusion we reached under § 29-2316 in Griffin and Schall.[14]
I recognize how this court's decisions in Hense and Vasquez might command the majority's disposition of this case. But I see little in § 29-2316 to compel the conclusion that the Legislature intended to insulate the decisions of the district court, sitting as an intermediate appellate court, from further appellate review. Under this court's construction of the statute, a district court's reversal of a lower court's judgment has become "`tantamount to a verdict of acquittal at the hands of the jury, not subject to review....'"[15] That is almost precisely what § 29-2316 was meant to preclude  not what it is meant to accomplish.
And I worry about what is coming next. In this case, the only result  so far  is an unnecessary trial. In previous cases, defendants have received the benefit of lesser convictions or sentences than they might have deserved.[16] But more is sure to come, and the court's current construction of § 29-2316 would leave us powerless to effectively correct more serious errors. In the present case, the proverbial chickens the court hatched in Hense have come home to roost. Wolves are sure to follow.
It is my hope that this court corrects course before more unintended mischief happens. We recently stated that "remaining true to an intrinsically sounder doctrine better serves the values of stare decisis than following a more recently decided case inconsistent with the decisions that came before it."[17] Returning to the sound doctrine of Griffin, Neiss, and Schall would serve us well. And failing that, the Legislature could amend the statutes relating to prosecutorial appeals, as the U.S. Congress has, to authorize the State to appeal whenever constitutionally permissible.[18] Otherwise, I fear a serious miscarriage of justice will occur that we will be powerless to undo. I respectfully dissent from the court's ultimate disposition.
HEAVICAN, C.J., and STEPHAN, J., join in this concurrence and dissent.
NOTES
[1] See Neb.Rev.Stat. §§ 28-904 and 28-907 (Reissue 2008).
[2] State v. Hessler, 274 Neb. 478, 741 N.W.2d 406 (2007); State v. Gunther, 271 Neb. 874, 716 N.W.2d 691 (2006).
[3] State v. Hense, 276 Neb. 313, 753 N.W.2d 832 (2008).
[4] See, State v. Dorcey, 256 Neb. 795, 592 N.W.2d 495 (1999); State v. Jensen, 226 Neb. 40, 409 N.W.2d 319 (1987).
[5] See State v. Hense, supra note 3.
[6] State v. Vasquez, 271 Neb. 906, 716 N.W.2d 443 (2006).
[7] See State v. Hessler, supra note 2.
[8] See State v. Delgado, 269 Neb. 141, 690 N.W.2d 787 (2005).
[9] State v. Green, 238 Neb. 328, 470 N.W.2d 736 (1991).
[10] See State v. Gunther, supra note 2.
[11] See State v. Hessler, supra note 2.
[12] State v. Wilson, 252 Neb. 637, 564 N.W.2d 241 (1997).
[13] Id.
[14] Id.
[15] See State v. Hessler, supra note 2.
[16] State v. Fernando-Granados, 268 Neb. 290, 682 N.W.2d 266 (2004).
[17] Id. at 306, 682 N.W.2d at 279.
[18] Id.
[19] Id. at 307, 682 N.W.2d at 280.
[20] Id. at 307, 682 N.W.2d at 279-80.
[21] See State v. Rhines, 548 N.W.2d 415 (S.D. 1996).
[1] State v. Fernando-Granados, 268 Neb. 290, 682 N.W.2d 266 (2004).
[2] State v. Vasquez, 271 Neb. 906, 716 N.W.2d 443 (2006).
[3] State v. Griffin, 270 Neb. 578, 705 N.W.2d 51 (2005).
[4] State v. Neiss, 260 Neb. 691, 619 N.W.2d 222 (2000).
[5] State v. Schall, 234 Neb. 101, 449 N.W.2d 225 (1989).
[6] State v. Hense, 276 Neb. 313, 753 N.W.2d 832 (2008).
[7] See id. (Gerrard, J., concurring in part, and in part dissenting; Heavican, C.J., and Stephan, J., join).
[8] See State v. Hochstein and Anderson, 262 Neb. 311, 632 N.W.2d 273 (2001).
[9] State v. Hamilton, 277 Neb. 593, 763 N.W.2d 731 (2009).
[10] See § 29-2316.
[11] See, U.S. Const. amend. V; Neb. Const. art. 1, § 12.
[12] Hense, supra note 6 (Gerrard, J., concurring in part, and in part dissenting; Heavican, C.J., and Stephan, J., join). See, also, Neiss, supra note 4.
[13] See, Smith v. Massachusetts, 543 U.S. 462, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005); United States v. Wilson, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).
[14] See, Griffin, supra note 3; Schall, supra note 5.
[15] Wilson, supra note 13, 420 U.S. at 345, 95 S.Ct. 1013.
[16] See, State v. Head, 276 Neb. 354, 754 N.W.2d 612 (2008); Hense, supra note 6; Vasquez, supra note 2. See, also, State v. Stafford, 278 Neb. 109, 767 N.W.2d 507 (2009).
[17] State v. Hausmann, 277 Neb. 819, 828, 765 N.W.2d 219, 226 (2009), citing Mayhew v. Mayhew, 205 W.Va. 490, 519 S.E.2d 188 (1999).
[18] See, 18 U.S.C. § 3731 (2006); Wilson, supra note 13.