Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/11/2018 09:09 AM CDT

STATE OF NEBRASKA, APPELLANT, V.
MATTHEW F. THALKEN, APPELLEE.

___ N.W.2d ___

Filed May 11, 2018.    No. S-16-830.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.

2. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.

3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

4. **Appeal and Error.** An appellate court independently reviews questions of law in appeals from the county court.

5. **Criminal Law: Courts: Appeal and Error.** When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court.

6. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

7. **Statutes.** The interpretation of a statute presents a question of law.

8. **Courts: Appeal and Error.** Neb. Rev. Stat. § 29-2315.01 (Reissue 2016) authorizes error proceedings taken from the district court sitting as an intermediate court of appeal.

9. **Constitutional Law: Search and Seizure: Evidence.** Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure.

10. **Probable Cause: Police Officers and Sheriffs: Investigative Stops: Motor Vehicles.** An officer's stop of a vehicle is objectively reasonable when the officer has probable cause to believe that a traffic violation, no matter how minor, has occurred.

11. **Probable Cause: Appeal and Error.** An appellate court determines whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances.

12. **Probable Cause: Police Officers and Sheriffs.** Probable cause is not defeated by an officer's incorrect belief regarding the law applicable to the facts.

13. **Probable Cause: Police Officers and Sheriffs: Appeal and Error.** In analyzing probable cause, an appellate court focuses on the facts known to the officer, not the conclusions the officer drew from those facts.

14. **Arrests: Probable Cause: Police Officers and Sheriffs.** Police officers are not required to be legal scholars. This means, among other things, that the arresting officer's knowledge of facts sufficient to support probable cause is more important to the evaluation of the propriety of an arrest than the officer's understanding of the legal basis for the arrest.

15. **Constitutional Law: Statutes: Jurisdiction: Appeal and Error.** In Nebraska, jurisdiction is vested in an appellate court through the Nebraska Constitution and the statutes enacted by the Legislature.

16. **Statutes: Appeal and Error.** The right of appeal in Nebraska is purely statutory.

17. **Constitutional Law: Jurisdiction: Appeal and Error.** Except in those cases where original jurisdiction is specifically conferred by Neb. Const. art. V, § 2, the Nebraska Supreme Court exercises appellate jurisdiction.

18. **Criminal Law: Appeal and Error.** The right to appeal in criminal cases can be exercised only by a party to whom it is given, and generally only a person aggrieved or injured by a judgment may take an appeal from it.

19. **Constitutional Law: Double Jeopardy: Appeal and Error.** An acquittal cannot be reviewed, on error or otherwise, without putting the defendant twice in jeopardy, thereby violating the Constitution.

20. **Double Jeopardy: Juries: Evidence: Pleas.** In Nebraska, jeopardy attaches (1) in a case tried to a jury, when the jury is impaneled and sworn; (2) when a judge, hearing a case without a jury, begins to hear

evidence as to the guilt of the defendant; or (3) at the time the trial court accepts the defendant's guilty plea.

21. **Trial: Double Jeopardy.** Double Jeopardy bars retrial where all three elements are present: (1) Jeopardy has attached in a prior criminal proceeding, (2) the defendant is being retried for the same offense prosecuted in that prior proceeding, and (3) the prior proceeding has terminated jeopardy.

22. **Statutes: Words and Phrases.** Such words and phrases as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood in Nebraska statutes according to such peculiar and appropriate meaning.

23. **Statutes: Legislature: Presumptions: Intent: Appeal and Error.** An appellate court will, if possible, give effect to every word, clause, and sentence of a statute, since the Legislature is presumed to have intended every provision of a statute to have a meaning.

24. **Statutes: Appeal and Error.** The rules of statutory interpretation require an appellate court to reconcile different provisions of the statutes so they are consistent, harmonious, and sensible in the context in which they appear.

25. **Courts: Judgments: Appeal and Error.** Under the language of Neb. Rev. Stat. § 29-2316 (Reissue 2016), when an exception proceeding is before the Nebraska Supreme Court or Court of Appeals from the district court where the trial took place in district court, § 29-2316 restricts the scope of any ruling directed at the defendant and district court. But under the language of § 29-2316, where the district court is sitting as an appellate court, the defendant was not placed in jeopardy in that court and the limitations of § 29-2316 do not apply to dispositions or orders directed at the district court.

Appeal from the District Court for Douglas County, J. Michael Coffey, Judge, on appeal thereto from the County Court for Douglas County, Lawrence E. Barrett, Judge. Exception sustained, and cause remanded with directions.

Matthew Kuhse, Omaha City Attorney, and Kevin J. Slimp for appellant.

W. Randall Paragas, of Paragas Law Offices, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ.

Per Curiam.

## I. NATURE OF CASE

The county court convicted Matthew F. Thalken of operating a motor vehicle while under the influence of alcohol, and Thalken appealed to the district court. In vacating Thalken's conviction and sentence, the district court focused on a police officer's mistake of law regarding a driving statute[1] and relied on one of our decisions.[2] We granted the State's application for leave to docket an exception proceeding.[3] Notwithstanding the officer's incorrect view of the law, when probable cause exists for a stop based on an objective view of the facts known to the officer, the stop does not offend the Constitution. We sustain the State's exception and conclude that because Thalken was not placed legally in jeopardy by the district court sitting as an appellate court, Neb. Rev. Stat. § 29-2316 (Reissue 2016) does not prevent us from reversing the district court's decision with directions to reinstate Thalken's conviction. Accordingly, we remand the cause to the district court with directions to reinstate and affirm Thalken's conviction and sentence.

## II. STATEMENT OF FACTS

This case arises out of Thalken's conviction for operating a motor vehicle while under the influence. At approximately 1:15 a.m. on July 26, 2015, Omaha police officer Pat Soltys was in his cruiser proceeding north on 168th Street in Omaha, Nebraska, when he observed a vehicle approach the cruiser from the rear at a very high rate of speed with illuminated fog lights—a type of auxiliary light. There were two northbound lanes of travel, and eventually, the vehicle, driven by Thalken, proceeded to within 40 feet of Soltys' cruiser and then passed. Soltys observed that the headlights of Thalken's vehicle were "bright" and the fog lights were "exceptionally bright." At

---

[1] Neb. Rev. Stat. § 60-6,225 (Reissue 2010).

[2] *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013).

[3] See Neb. Rev. Stat. § 29-2315.01 (Reissue 2016).

no time did Thalken dim any of his vehicle's lights. Soltys made a traffic stop, observed signs of alcohol impairment, and noticed an odor of alcohol coming from the vehicle.

Soltys testified that the reason he stopped Thalken was not because he was speeding or following too close, but that he believed Thalken's fog lights were illegally illuminated. Soltys testified that he "believed, at the time, that having fog lights on, auxiliary lights on, in itself, was a violation." He further clarified that consistent with his report regarding the incident, he "'[s]topped the vehicle for having its auxiliary lights on during normal/stable weather.'"

The State charged Thalken in the county court for Douglas County with operating a motor vehicle while under the influence. Thalken filed a motion to suppress challenging the traffic stop. The county court denied the motion and, after a bench trial on stipulated facts, found him guilty of the charged offense.

Thalken appealed the county court's denial of his motion to suppress and his conviction to the district court. Therefore, in this case, the district court was sitting as an appellate court. After a hearing, the district court reversed. In its order, the district court determined that Soltys did not have probable cause to stop Thalken. As to the law, the district court concluded that the use of auxiliary lights was not a traffic violation, and as to the facts, the district court found that the traffic stop was based on Soltys' incorrect belief that having auxiliary lights on was in and of itself a traffic violation. The district court stated that because Thalken drove his vehicle within 200 feet of the rear of the cruiser with both extremely bright auxiliary lights and bright headlights illuminated, Thalken had violated § 60-6,225(2) and another statute.[4] However, referring to our decision in *State v. Au*,[5] the district court nonetheless vacated Thalken's county court conviction and sentence.

---

[4] Neb. Rev. Stat. § 60-6,224(2) (Reissue 2010).

[5] *State v. Au, supra* note 2.

On August 31, 2016, the State filed an application for leave to docket an exception proceeding. The State claimed that the district court sitting as an appellate court erred when it reversed the county court's ruling denying Thalken's motion to suppress and, as a result, reversed the judgment of the county court and vacated and set aside the conviction. We granted the State's application for leave to docket an exception proceeding.

### III. ASSIGNMENTS OF ERROR

The State claims that the district court erred when it (1) reversed the county court's ruling which denied Thalken's motion to suppress and (2) reversed the judgment of the county court and ordered that Thalken's conviction and sentence be vacated and set aside.

### IV. STANDARDS OF REVIEW

[1-5] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.[6] Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.[7] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[8] But we independently review questions of law in appeals from the county court.[9] When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court.[10]

---

[6] *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014).

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[6] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[11] Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[12]

[7] The interpretation of a statute presents a question of law.[13]

## V. ANALYSIS

[8] Before addressing the merits, we note that the State is the appellant. Absent specific statutory authorization, the State generally has no right to appeal an adverse ruling in a criminal case.[14] As we have already noted, the State appeals under § 29-2315.01, which provides an exception to the general rule by allowing a county attorney to request appellate review of an adverse ruling by a district court. We have interpreted the statute to authorize exception proceedings taken from the district court sitting as an intermediate court of appeal.[15] Although we have sometimes described a proceeding under § 29-2315.01 as an "error" proceeding, that statute contemplates the State's "exception" and in the interest of precision, we use that term.

### 1. Probable Cause for Traffic Stop

[9] This appeal arises out of the question of whether there was legal justification for Soltys to stop Thalken. The Fourth Amendment to the U.S. Constitution and article I, § 7, of the

---

[11] *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017).

[12] *Id.*

[13] *State v. Beitel*, 296 Neb. 781, 895 N.W.2d 710 (2017).

[14] *State v. Hense*, 276 Neb. 313, 753 N.W.2d 832 (2008).

[15] *State v. Schall*, 234 Neb. 101, 449 N.W.2d 225 (1989), *overruled on other grounds, State v. Hense, supra* note 14.

Nebraska Constitution protect individuals against unreasonable searches and seizures by the government. Stopping an automobile and detaining its occupants constitute a """"seizure"""" within the meaning of the Fourth Amendment, and if the seizure was illegal, the evidence obtained as a result is inadmissible.[16] Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure."[17]

[10-13] An officer's stop of a vehicle is objectively reasonable when the officer has probable cause to believe that a traffic violation, no matter how minor, has occurred.[18] We determine whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances.[19] The question is whether the facts available to the officer would cause a reasonably cautious person to believe that the suspect has committed an offense.[20] Probable cause is not defeated by an officer's incorrect belief regarding the law applicable to the facts.[21] We focus on the facts known to the officer, not the conclusions the officer drew from those facts.[22]

In this matter, Thalken urges us to find that the traffic stop was objectively unreasonable because Soltys initiated it based solely on a mistaken interpretation of the auxiliary lights statute, § 60-6,225, which Soltys believed

---

[16] *Berkemer v. McCarty*, 468 U.S. 420, 436-37, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984).

[17] *United States v. Calandra*, 414 U.S. 338, 347, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). Accord *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005), *overruled on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

[18] See *State v. Au, supra* note 2.

[19] *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011).

[20] See *State v. Au, supra* note 2.

[21] See *State v. McCave, supra* note 19.

[22] *State v. Ball*, 271 Neb. 140, 710 N.W.2d 592 (2006).

Thalken had violated when he drove with fog lights turned on during normal weather conditions. The State contends that because Thalken drove within 40 feet of Soltys' cruiser while displaying exceptionally bright auxiliary lights, i.e., fog lights, Thalken violated § 60-6,225(2), which, when read with other statutes, prohibits the use of bright auxiliary or fog lights when approaching other vehicles. The State claims that because of this violation, the traffic stop was supported by probable cause. Given the State's position, we limit our analysis to whether there was probable cause to stop on the basis that Thalken violated § 60-6,225(2). We agree with the State that probable cause supported the stop.

We first identify the statutes relevant to our analysis. Section 60-6,225(2) provides, in pertinent part:

> Any motor vehicle may be equipped with not to exceed two auxiliary driving lights [which shall comply with the] limitations set forth in section 60-6,221. . . . Auxiliary driving lights shall be turned off at the same time the motor vehicle's headlights are required to be dimmed when approaching another vehicle from either the front or the rear.

As relevant to this case, the "limitations set forth in section 60-6,221" to which reference is made in § 60-6,225(2) include a provision making it illegal for auxiliary lights to "project a glaring or dazzling light to persons in front of such headlights."[23]

Section 60-6,221(2) provides:

> Headlights shall be deemed to comply with the provisions prohibiting glaring and dazzling lights if none of the main bright portion of the headlight beam rises above a horizontal plane passing through the light centers parallel to the level road upon which the loaded vehicle stands and in no case higher than forty-two inches, seventy-five feet ahead of the vehicle.

---

[23] Neb. Rev. Stat. § 60-6,221(1) (Reissue 2010).

Finally, § 60-6,224(2) provides that vehicle headlights are required to be dimmed whenever another vehicle follows "another vehicle within two hundred feet to the rear."

As Thalken and the district court agree, Nebraska law does not make it illegal per se to drive with auxiliary driving lights including fog lights turned on, and Soltys was incorrect in his belief that it was improper to drive with fog lights turned on during normal visibility conditions.[24] But the State correctly notes that because Thalken was within 200 feet of Soltys' cruiser, § 60-6,224(2) required Thalken's headlights to be dimmed, and that he failed to turn off his auxiliary lights, which violated § 60-6,225(2). The uncontradicted facts show, as urged by the State, that Thalken violated § 60-6,225(2).

The district court concluded, "[T]he fact that [Thalken] drove his vehicle within two hundred feet of the rear of the cruiser with the auxiliary lights on was a violation of Neb. Rev. Stat. [§§] 60-6,225(2) and 60-6,224(2)." And it is well settled that a violation, no matter how minor, creates probable cause for an officer to stop the driver of a vehicle.[25] However, even though the district court found a violation of driving statutes, the district court did not conclude that probable cause existed.

Instead, in reversing the ruling and judgment of the county court, the district court relied on Soltys' mistake regarding the vehicle's fog lights, which served as his basis for the stop, and determined that "the incorrect assumption of [Soltys] did not provide him with probable cause to stop [Thalken]." The district court reasoned that "[t]o find that [an] officer's mistaken belief that a violation had occurred [gives] police officers the ability to 'create' instances which would then be used as probable cause to justify a traffic stop." The district court referred to *Au*[26] as the basis for its ruling. As we explain below, the district court misperceives *Au*.

---

[24] See *State v. Carnicle*, 18 Neb. App. 761, 792 N.W.2d 893 (2010).

[25] *State v. Sanders*, 289 Neb. 335, 855 N.W.2d 350 (2014).

[26] *State v. Au, supra* note 2.

In *Au*, we considered a traffic stop based on Neb. Rev. Stat. § 60-6,139(1) (Reissue 2010), which requires a motor vehicle operator to remain within a traffic lane "as nearly as practicable." We observed that the statute gave leeway in the determination of whether the facts met the descriptive phrase "as nearly as practicable" and whether the driver violated the statute. We noted that the surrounding circumstances must be considered in determining the existence of a violation and hence a determination regarding probable cause.

In *Au*, we said that in contrast to the statute at issue therein, some other driving statutes strictly declare particular actions to be traffic violations. One such strict statute was implicated in *State v. Magallanes*,[27] wherein we held that the driver of a vehicle crossing a fog line and driving on the shoulder of the highway, albeit briefly, violated the statute prohibiting driving on a shoulder. The present case is similar to *Magallanes*, in that particular objective facts and not surrounding circumstances determine whether an act was a violation of a driving statute. The State observed that the uncontradicted facts are that Thalken was within 200 feet of Soltys' cruiser and that he did not turn off his fog lights, in violation of § 60-6,225(2). Here, unlike in *Au*, no subjective or other facts were required to establish a driving violation and hence probable cause.

Evidently, the district court in the instant case referred to *Au* for that case's discussion regarding the mistaken understanding of a statute shared by the district court and the sheriff's officer. Because as just explained, the statute in *Au* and the statute at issue are not comparable and the statute now at issue is not subject to consideration of additional circumstances or scholarly legal analysis, the district court's reliance on *Au* was misplaced.

Similar to the district court's reasoning, Thalken maintains, relying on *Au*, that Soltys' mistaken view of the law makes the stop improper. But in *Au*, we determined that the stop was not

---

[27] *State v. Magallanes*, 284 Neb. 871, 824 N.W.2d 696 (2012).

justified due to lack of proof of the surrounding circumstances as required by the statute, not because the sheriff's officer or the district court misperceived the law.

As we have often stated, probable cause to stop a vehicle is analyzed under an objective reasonableness standard, and thus, the officer's subjective intent or motivation is not relevant.[28] That is, if an officer is aware of facts amounting to probable cause to stop a violator, the stop is objectively reasonable and any ulterior motivation is irrelevant.[29]

[14] From our preceding discussion, it is clear that Soltys possessed facts from which it was reasonable to believe Thalken committed a traffic violation, and the county court properly denied Thalken's motion to suppress. The district court erred when it limited its analysis to Soltys' mistake regarding the operation of auxiliary lights statute and ignored the uncontroverted facts. In the arrest context, we have stated: "'Police officers are not required to be legal scholars. This means, among other things, that the arresting officer's knowledge of facts sufficient to support probable cause is more important to the evaluation of the propriety of an arrest than the officer's understanding of the legal basis for the arrest.'"[30] The same reasoning applies here. As the State urges, given the uncontroverted facts, "Thalken was required to turn off his auxiliary lights when he approached Soltys['] vehicle from the rear."[31] When Thalken failed to do so, Soltys had knowledge of facts that Thalken had committed an offense under § 60-6,225(2); hence, probable cause existed. The county court did not err when it overruled Thalken's motion to suppress, but the district court sitting as an appellate court erred when it disagreed with this ruling and reversed Thalken's conviction.

---

[28] *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008), citing *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).

[29] See *State v. Sanders, supra* note 25.

[30] *State v. Ball, supra* note 22, 271 Neb. at 154, 710 N.W.2d at 605, quoting *Williams v. Jaglowski*, 269 F.3d 778 (7th Cir. 2001).

[31] Brief for appellant at 5.

Accordingly, we find merit in the State's exception to the district court's ruling.

## 2. Effect of Ruling on Conviction

The parties characterize this appeal as an "'error proceeding.'"[32] They do so, presumably, because of several of our previous decisions.[33]

This, in turn, has led to a focus on language in § 29-2316, stating in pertinent part:

> The judgment of the court in any action taken pursuant to section 29-2315.01 *shall not be reversed nor in any manner affected* when the defendant *in the trial court* has been *placed legally in jeopardy*, but in such cases the decision of the appellate court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered or which may thereafter arise in the state.

(Emphasis supplied.) The "not be reversed nor in any manner affected" language of § 29-2316 led us to conclude that where a defendant has appealed a county court conviction and sentence in a criminal case to the district court and the district court, as an intermediate appellate court, has erroneously reversed the county court's judgment, a higher appellate court could not, consistent with § 29-2316, reinstate the county court's judgment. We take this opportunity to correct this misunderstanding as well as to identify a basis for appellate jurisdiction other than exception proceedings.

### (a) Basis of Appellate Jurisdiction

[15-17] In Nebraska, jurisdiction is vested in an appellate court through the Nebraska Constitution and the statutes

---

[32] See, e.g., *id*. at 9.

[33] See *State v. Schall, supra* note 15. See, also, *State v. Kleckner*, 291 Neb. 539, 867 N.W.2d 273 (2015); *State v. Vasquez*, 271 Neb. 906, 716 N.W.2d 443 (2006); *State v. Jones*, 264 Neb. 812, 652 N.W.2d 288 (2002); *State v. Golgert*, 223 Neb. 950, 395 N.W.2d 520 (1986); *State v. Ziemba*, 216 Neb. 612, 346 N.W.2d 208 (1984).

enacted by the Legislature.[34] Over and over, we have reiterated that the right of appeal in Nebraska is purely statutory.[35] Except in those cases where original jurisdiction is specifically conferred by Neb. Const. art. V, § 2, the Nebraska Supreme Court exercises appellate jurisdiction.[36] And the Nebraska Constitution limits that appellate jurisdiction to "such appellate jurisdiction as may be provided by law."[37] In other words, appellate jurisdiction must be created by statute.[38]

This allocation is driven by the constitutional provision dividing the powers of government into three distinct departments—legislative, executive, and judicial.[39] Together, these constitutional provisions prevent courts from inventing rules to enlarge appellate jurisdiction.[40] Thus, we focus on the Nebraska statutes authorizing appellate jurisdiction and providing procedures for its exercise. And we do so in the limited context of appeals or exception proceedings in criminal cases and in particular those cases where the criminal defendant was convicted in county court and appealed to the district court; that is, where the district court was sitting as an appellate court.

### (b) Appeals by Defendants From Trial Courts in Criminal Cases

[18] Several Nebraska statutes have been correctly understood to generally limit the right to appeal from a trial court's judgment in criminal cases to appeals by a defendant.[41] Thus,

---

[34] See, Neb. Const. art. V, § 2; Neb. Rev. Stat. § 24-204 (Reissue 2016); *Nebraska Dept. of Health & Human Servs. v. Struss*, 261 Neb. 435, 623 N.W.2d 308 (2001).

[35] See, e.g., *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017).

[36] See *id.*

[37] Neb. Const. art. V, § 2.

[38] See *Heckman v. Marchio, supra* note 35.

[39] See Neb. Const. art. II, § 1(1).

[40] See *Heckman v. Marchio, supra* note 35.

[41] See *State v. Berry*, 192 Neb. 826, 224 N.W.2d 767 (1975).

we have said that it is a general rule that the right to appeal in criminal cases can be exercised only by a party to whom it is given and that generally, only a person aggrieved or injured by a judgment may take an appeal from it.[42] Separate statutes govern defendants' appeals from the respective trial courts.

### (i) District Courts

As to criminal proceedings where the district court acts as a trial court, a combination of statutes limits the right to appeal to a defendant.[43] One statute authorizes an appeal by "a person . . . convicted of an offense," in other words, by a defendant.[44] This must be read together with the general statutes authorizing appeals from district court.[45] Section 25-1912 specifically prescribes the appeal procedure, which applies to both civil and criminal appeals.

But review of criminal cases by appeal is a relatively recent development. At one time, the method of review of all criminal cases in the Supreme Court was upon writ of error.[46] The transition away from writs of error began in 1957,[47] continued in 1961[48] and 1973,[49] and culminated in 1982.[50] And an understanding of the writ of error procedure is essential to making sense of the exception proceedings now permitted to be taken by the State.

### (ii) County Courts

In contrast to the statutes governing district courts, the statute limiting appeals from county court in criminal cases

---

[42] *Id.*

[43] *Id.*

[44] Neb. Rev. Stat. § 29-2301 (Reissue 2016).

[45] See Neb. Rev. Stat. §§ 25-1911 and 25-1912 (Reissue 2016).

[46] See *Krell v. Mantell*, 157 Neb. 900, 62 N.W.2d 308 (1954).

[47] See 1957 Neb. Laws, L.B. 407, § 2.

[48] See 1961 Neb. Laws, L.B. 394, § 3.

[49] See 1973 Neb. Laws, L.B. 146, § 5.

[50] See 1982 Neb. Laws, L.B. 722, § 7.

is explicit: "Any party in a civil case and *any defendant in a criminal case* may appeal from the final judgment or final order of the county court to the district court of the county where the county court is located."[51] This statute also states in part, "In a criminal case, a prosecuting attorney may obtain review by exception proceedings pursuant to sections 29-2317 to 29-2319."[52] Thus, it is clear that in regard to a criminal case in county court, a defendant may "appeal," but the State is limited to an "exception proceeding[]."[53]

In the county court, § 25-2728 authorizes an appeal by a defendant.[54] A separate statute, Neb. Rev. Stat. § 25-2729 (Reissue 2016), prescribes the procedure to be followed in taking such an appeal. In such an appeal, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.[55] Because Thalken took an appeal from the county court to the district court, §§ 25-2728 and 25-2729 governed his appeal.

### (c) Appeals by the State

Separate statutes authorize exception proceedings from the respective trial courts.

### (i) District Courts

Before 1959, the State could be permitted to proceed upon a writ of error to the Supreme Court from a criminal case in the district court.[56] But the proceeding by the State could not "reverse[] nor in any manner affect[]" the district court's judgment; rather, its sole purpose was to "determine the law to

---

[51] Neb. Rev. Stat. § 25-2728(1) (Reissue 2016) (emphasis supplied).

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *State v. Todd*, 296 Neb. 424, 894 N.W.2d 255 (2017).

[56] See Neb. Rev. Stat. §§ 29-2314 to 29-2316 (Reissue 1956).

govern in any similar case" which might be pending or would arise later.[57]

But in 1959, the statute was changed to permit the Supreme Court's decision to sometimes affect the case giving rise to the matter before it.[58] As of that time, the statute, § 29-2316, prohibited further proceedings in the particular case "where the defendant in the trial court has been placed legally in jeopardy."[59] Where the defendant "had not been placed legally in jeopardy prior to the entry of [the] erroneous order," the proceeding could resume against the defendant, applying the law determined by the Supreme Court.[60] It was also in 1959 that a new statute was adopted prescribing the procedure for the State to follow to "take exception to any ruling or decision of the court" by an application for leave to docket an error proceeding.[61] We have described this statute as a "special procedure."[62] Although the procedure has been modified since then to take exception by seeking "leave to docket an appeal,"[63] the language of § 29-2316 (Reissue 2016) remains essentially unchanged.

### (ii) County Courts

Because the case before us addresses an appeal taken by a defendant to the district court, we omit most of the details pertaining to appeals or exception proceedings available to the State from a county court ruling or decision. Prior to the reorganization of county courts in the early 1970's, there was no procedure for appeals from county court judgments in criminal cases by the State. Rather, the statute governing

---

[57] See § 29-2316 (Reissue 1956).

[58] See 1959 Neb. Laws, L.B. 461, § 3.

[59] *Id*. (emphasis omitted).

[60] § 29-2316 (Reissue 1964).

[61] § 29-2315.01 (Reissue 1964). See 1959 Neb. Laws, L.B. 461, § 1.

[62] *State v. Dunlap*, 271 Neb. 314, 316, 710 N.W.2d 873, 875 (2006).

[63] See § 29-2315.01 (Reissue 2016).

appeals from magistrates, including justices of the peace, municipal judges, and county judges, conferred the right of appeal expressly upon the "defendant."[64] In 1975, a statute, comparable to the procedures applicable to district courts, was enacted to permit a prosecuting attorney to take an "exception" to the district court from a county court ruling or decision.[65]

### (d) §§ 24-204 and 25-1912:
### A Jurisdictional Path

In 1989, in *State v. Schall*,[66] we examined § 29-2315.01 (Cum. Supp. 1988) and reasoned that it provided a jurisdictional basis under which the State could bring a case to the Supreme Court from the district court, where the district court sat as an appellate court in an appeal brought by a criminal defendant. But even in 1989, a jurisdictional path to the Supreme Court from the district court sitting as an appellate court, other than by § 29-2315.01, existed. And our decision in *Schall* overlooked it.

At the time, the defendant's appeal in *Schall* began under Neb. Rev. Stat. § 24-541.01(1) (Cum. Supp. 1984), which stated in part, "Any party may appeal from the final judgment or final order of the county court to the district court of the county where the county court is located." Neb. Rev. Stat. § 24-541.02 (Cum. Supp. 1984) prescribed the familiar appeal procedure, requiring the filing of a notice of appeal and depositing of a docket fee. Neb. Rev. Stat. § 24-541.06(1) (Cum. Supp. 1984) required the district court to "render a judgment which may affirm, affirm but modify, or reverse the judgment or final order of the county court." Under those sections, the district court acted as an intermediate appellate court.[67]

---

[64] See Neb. Rev. Stat. § 29-611 (Reissue 1964).

[65] Neb. Rev. Stat. § 29-2317(1) (Reissue 2016). See 1975 Neb. Laws, L.B. 130, § 1.

[66] *State v. Schall, supra* note 15.

[67] See *State v. Thompson*, 224 Neb. 922, 402 N.W.2d 271 (1987).

In 1989, all appeals from judgments of the district court ran to the Nebraska Supreme Court. This predated the Nebraska Court of Appeals, which had not yet come into existence. And § 24-204 (Reissue 1989) then conferred upon the Supreme Court, as that statute's current version does now, "appellate and final jurisdiction of all matters of appeal and proceedings in error which may be taken from the judgments or decrees" of the district courts. The "judgment" required by § 24-541.06(1) fell within the scope of the Supreme Court's appellate jurisdiction. Thus, § 24-204 (Reissue 1989) broadly conferred appellate jurisdiction on the Supreme Court over appeals including those by the State from a district court's judgments or decrees, which included those rulings by the district court stemming from a defendant's appeal from the county court. Section 25-1911 (Reissue 1985) empowered the Supreme Court to reverse, vacate, or modify, for errors appearing on the record, a judgment rendered or final order made by the district court.[68] Section 25-1912 (Reissue 1985) merely prescribed the procedure for taking of the further appeal from the district court to the Supreme Court. And where the district court was sitting as an appellate court, the issues on appeal to the Supreme Court would be limited to those issues that had been raised in the district court.

Thus, our decision in *Schall*[69] was flawed to the extent that it overlooked the statutes conferring appellate jurisdiction upon the Supreme Court and prescribing the procedure for appeal of district court judgments or decrees to this court. We overlooked the then-existing statutes which provided the jurisdictional path.

We have adhered to § 29-2315.01 (Reissue 2016) as the only jurisdictional "path" from the district court to this court based on the admittedly weak reasoning of *Schall*. However, § 24-204 (Reissue 2016) confers upon this court "appellate

---

[68] See, also, Neb. Rev. Stat. § 25-2733 (Reissue 2016) and *State v. Erlewine*, 234 Neb. 855, 452 N.W.2d 764 (1990).

[69] *State v. Schall, supra* note 15.

and final jurisdiction of all matters of appeal and proceedings in error which may be taken from the judgments or decrees of other courts." And Neb. Rev. Stat. § 24-1106(1) (Reissue 2016) confers appellate jurisdiction upon the Nebraska Court of Appeals. Section 25-2728 confers appellate jurisdiction upon the district court over a defendant's appeal from a county court. Instead of relying upon §§ 24-204, 24-1106, and 25-1912, we have depended upon § 29-2315.01 as the path for further appeal by the State in criminal cases where the appeal from county court to district court was initiated by a defendant.

Because of this history, the parties naturally focused on § 29-2315.01 as the only jurisdictional path. This focus led to filing of the § 25-1912 (Reissue 2016) docket fee in this case more than 30 days after the district court's judgment. Of course, this would be fatal to jurisdiction but for the parties' reliance on § 29-2315.01. We respect this choice and proceed accordingly under § 29-2315.01. This will in turn lead to the effect of the ruling statute, § 29-2316, which we address later.

[19] We take this opportunity to note that the Legislature could simplify the procedures governing appeals by the State in criminal cases, but it is neither prudent nor proper for this court to usurp the legislative function. In *United States v. Sisson*,[70] the U.S. Supreme Court, under similar circumstances, elected to await a legislative solution which would clarify the jurisdictional basis for criminal appeals taken by the government. In the federal criminal law, the government is authorized by statute to appeal in a criminal case pursuant to several different statutory provisions subject, of course, to constitutional limitations. Being a jurisdictional statute, the Criminal Appeals Act precludes an appeal by the government where implementation of the outcome will be moot due to double jeopardy; in effect, in federal court where there is no real case

---

[70] *United States v. Sisson*, 399 U.S. 267, 90 S. Ct. 2117, 26 L. Ed. 2d 608 (1970).

or controversy, there will be no appeal.[71] At issue in *Sisson* was whether the federal district court's order styled "arrest of judgment" was in fact an arrest of judgment which was appealable under the then-effective Criminal Appeals Act,[72] or an acquittal, which is not appealable, because an "acquittal [cannot] be reviewed, on error or otherwise, without putting [the defendant] twice in jeopardy, and thereby violating the Constitution."[73]

Having concluded the order in *Sisson* was an acquittal and therefore not appealable by the government on that basis, the Court considered whether the order was appealable under the "'motion in bar'" provision of the Criminal Appeals Act, stating: "The language of the motion-in-bar provision itself limits appeals to those granted 'when the defendant has not been put in jeopardy.' We read that limitation to mean exactly what it says—*i. e.*, no appeal from a motion in bar is to be granted after jeopardy attaches."[74] The *Sisson* opinion stated that at the time the statute was written, "there was little dispute over the then-settled notion that a defendant was put into jeopardy once the jury was sworn."[75] The comment regarding "put in jeopardy" echoes the Nebraska Legislature's choice of language in 1959, which we discuss later in the portion of our opinion considering the effect of our ruling under § 29-2316.

The U.S. Supreme Court in *United States v. Jorn*[76] summarized the opinion in *Sisson* as follows: "[T]he 'put in jeopardy' language [precluding an appeal by the government] applied

---

[71] *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997).

[72] *United States v. Sisson, supra* note 70, 399 U.S. at 270. See 18 U.S.C. § 3731 (1964 & Supp. V 1970).

[73] *United States v. Ball*, 163 U.S. 662, 671, 16 S. Ct. 1192, 41 L. Ed. 300 (1896).

[74] *United States v. Sisson, supra* note 70, 399 U.S. at 304-05.

[75] *Id.*, 399 U.S. at 305.

[76] *United States v. Jorn*, 400 U.S. 470, 474-75, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971).

whenever the jury had been impaneled, even if the defendant might constitutionally have been retried under the double jeopardy provisions of the Fifth Amendment." That is, jurisdiction would not lie because of the statutory language "put in jeopardy," not because the defendant did or did not face constitutional double jeopardy in subsequent proceedings.

The *Sisson* Court refused to read "put in jeopardy" as a "restatement of the constitutional prohibition" against double jeopardy, because such reading would render the phrase "superfluous."[77] The *Sisson* Court, stating the obvious, continued, "No Senator thought that Congress had the power under the Constitution to provide for an appeal in circumstances in which that would violate [the double jeopardy prohibition in] the Constitution."[78] In its conclusion, the *Sisson* Court stated that although it was dissatisfied with the jurisdictional limitations of the Criminal Appeals Act, it would adhere to the terms of the act "until such time as Congress decides to amend the statute."[79]

In 1975, the Court noted that Congress recognized the difficulties of the Criminal Appeals Act disparaged in *Sisson* and

> finally disposed of the statute in 1970 and replaced it with a new Criminal Appeals Act intended to broaden the Government's appeal rights. . . . [T]he legislative history makes it clear that Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit.[80]

The new statute, passed as Title III of the Omnibus Crime Control Act of 1970,[81] provides in part:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment,

---

[77] *United States v. Sisson, supra* note 70, 399 U.S. at 305.

[78] *Id.*

[79] *Id.*, 399 U.S. at 308.

[80] *United States v. Wilson*, 420 U.S. 332, 337, 95 S. Ct. 1013, 43 L. Ed. 2d 232 (1975).

[81] Pub. L. No. 91-644, 84 Stat. 1890.

or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the *double jeopardy* clause of the United States Constitution prohibits further prosecution.[82]

This revision to the Criminal Appeals Act made clear that "Congress was determined to avoid creating nonconstitutional bars to the Government's right to appeal."[83] The evolution of the federal statute provides a cautionary tale. The language with respect to jurisdiction was changed by legislature, not the Court. In any event, because the jurisdictional path in this case is controlled by § 29-2315.01, we turn to the effect of a ruling permitted by § 29-2316 in an exception proceeding.

### (e) § 29-2316 Remains Controlling

Under the statute pertaining to exception proceedings, as we explained in *State v. Vasquez*,[84] § 29-2316 limits the relief we can afford, even if the exception taken by the State is sustained. This is because the application of § 29-2316 by its terms turns on whether the defendant had been placed in jeopardy in the trial court, not by whether the Double Jeopardy Clause bars further action. Although this is the law in Nebraska, the State urges us to return to the position expressed in an interlude of cases in which we equated "placed legally in jeopardy" with double jeopardy. We reject the State's suggestion. Because jurisdiction of this exception proceeding and its disposition are controlled by §§ 29-2315.01 and 29-2316, we must faithfully adhere to the terms of these statutory grants.

Section 29-2316 provides in relevant part as follows:

The judgment of the court in any action taken pursuant to section 29-2315.01 shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy, but in such cases the decision of the [Nebraska Supreme Court or Court of

---

[82] 18 U.S.C. § 3731 (1970) (emphasis supplied).

[83] *United States v. Wilson, supra* note 80, 420 U.S. at 339.

[84] *State v. Vasquez, supra* note 33.

Appeals] shall determine the law to govern in any similar case which may be pending . . . or which may thereafter arise . . . .

The premise of the State's suggestion is that the phrase of § 29-2316 "has been placed legally in jeopardy" in the trial court is the equivalent of double jeopardy. The premise is faulty and not necessary to the reversal it seeks, and in addition, it ignores the importance of the phrase "in the trial court" found in § 29-2316. As we have discussed above in our discussion of the "jurisdictional path," along with the U.S. Supreme Court as reflected in *United States v. Sisson*,[85] we recognize that "placed in jeopardy" is not the equivalent of "double jeopardy." And as we further explain below, where the matter is brought to us by an exception proceeding from the district court sitting as an appellate court, § 29-2316 does not limit the relief we can order, because the defendant was not placed legally in jeopardy in that court. Our holding necessarily overrules cases like *State v. Kleckner*[86] and *State v. Figeroa*.[87]

Historically, in ruling on cases brought under § 29-2315.01, we have focused on the language of §§ 29-2315.01 and 29-2316, especially as they pertain to the scope of relief. For decades, we respected the language of §§ 29-2315.01 and 29-2316. For example, in a case where the exception proceeding was brought prematurely, we distinguished between the phrases "has been placed legally in jeopardy" in § 29-2316 (Reissue 1964) and "double jeopardy" and found the former to be the proper reading of § 29-2316.[88] And in a case where an exception proceeding had been taken from the county court to the district court under § 29-2317 (Reissue 1975), we found that the district court's conclusion that the county

---

[85] *United States v. Sisson, supra* note 70.

[86] *State v. Kleckner, supra* note 33.

[87] *State v. Figeroa*, 278 Neb. 98, 767 N.W.2d 775 (2009).

[88] See *State v. Taylor*, 179 Neb. 42, 136 N.W.2d 179 (1965).

court had erred was correct, but that under the language of Neb. Rev. Stat. § 29-2319(1) (Reissue 1975), which is comparable to § 29-2316, the district court erred when it affected the judgment.[89]

Although we detoured for a period of time in equating "placed legally in jeopardy" with constitutional double jeopardy, we returned to our adherence to the commands of the statutory language. As we reasoned in *Vasquez*, when the Legislature chose language which limited relief where the defendant has previously been placed legally in jeopardy, it meant something different from constitutional double jeopardy.[90] This is a logical reading of this temporal statute; § 29-2316 (Reissue 2016) is structured to limit relief based on past events, and furthermore, it would be unnecessary for the Legislature to remind the Supreme Court to refrain from issuing future orders which violate the defendant's long-upheld constitutional rights, including the right to be free from double jeopardy.

[20] We read "placed legally in jeopardy" as used by the Legislature in § 29-2316 as reflecting and incorporating Nebraska jurisprudence. In Nebraska, jeopardy attaches (1) in a case tried to a jury, when the jury is impaneled and sworn; (2) when a judge, hearing a case without a jury, begins to hear evidence as to the guilt of the defendant; or (3) at the time the trial court accepts the defendant's guilty plea.[91]

[21] In contrast to "placed legally in jeopardy," more elements must be present to implicate constitutional double jeopardy under both the federal and state Constitutions. We have summarized the elements of double jeopardy in Nebraska.[92] Double jeopardy bars retrial where all three elements are present: (1) Jeopardy has attached in a prior criminal proceeding,

---

[89] See *State v. McDermott*, 200 Neb. 337, 263 N.W.2d 482 (1978).

[90] *State v. Vasquez, supra* note 33.

[91] See *id.*

[92] See *State v. Bostwick*, 222 Neb. 631, 385 N.W.2d 906 (1986).

(2) the defendant is being retried for the same offense prosecuted in that prior proceeding, and (3) the prior proceeding has terminated jeopardy.[93] Examples of terminated jeopardy are an acquittal by a jury or by a trial judge,[94] a directed verdict of acquittal by the trial judge for insufficient evidence,[95] and a conviction reversed for insufficient evidence.[96] As is evident from the foregoing, jeopardy may have attached, but the several requirements of freedom from double jeopardy which prohibit retrial may not yet have occurred. The universe of defendants who fit the description of the legislative phrase "placed legally in jeopardy" is not the equivalent of and, in fact, is obviously greater than the universe of defendants who are threatened by double jeopardy.

[22,23] We read the phrase "has been placed legally in jeopardy" as having been inserted in § 29-2316 by the Legislature intentionally and with purpose. And under the statute prescribing general rules of construction, such "words and phrases . . . as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood [in Nebraska statutes] according to such peculiar and appropriate meaning."[97] We will, if possible, give effect to every word, clause, and sentence of a statute, since the Legislature is presumed to have intended every provision of a statute to have a meaning.[98] Just as the U.S. Supreme Court recognized concerning similar terms in *Sisson*, equating "placed legally in jeopardy" in the controlling statute, § 29-2316, with double jeopardy was

---

[93] See *id.*

[94] See *Arizona v. Washington*, 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978).

[95] See *Hudson v. Louisiana*, 450 U.S. 40, 101 S. Ct. 970, 67 L. Ed. 2d 30 (1981).

[96] See *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

[97] Neb. Rev. Stat. § 49-802(5) (Reissue 2010).

[98] *State v. Covey*, 290 Neb. 257, 859 N.W.2d 558 (2015).

warranted neither by the jurisprudence nor by the language or meaning of that statute.[99]

### (f) Effect of § 29-2316 in Exception Proceedings After the Defendant's Appeal From County Court to District Court

We turn now to the phrase "in the trial court" in § 29-2316, which we understand describes where "placed legally in jeopardy" occurred. To repeat, the first sentence of § 29-2316 states:

> The judgment of the court in any action taken pursuant to section 29-2315.01 shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy, but in such cases the decision of the [Nebraska Supreme Court or Court of Appeals] shall determine the law to govern in any similar case which may be pending . . . or which may thereafter arise . . . .

[24] We recognize that "trial court" lacks specificity, but we give it a consistent, harmonious, and sensible reading in the statutory context in which it appears.[100] Thus, with respect to relief under § 29-2316, placed legally in jeopardy "in the trial court" means the scope of grantable appellate relief is restricted on cases filed with us or in the Court of Appeals reviewing a ruling from the forum where jeopardy attached. So where the trial took place in district court and the exception proceeding was taken therefrom, the scope of relief is limited, as we recognized in *State v. Hense.*[101] Likewise, where the trial took place in the county court and an exception proceeding is taken to the district court, under § 29-2319 (Reissue 2016), the district court is limited in the scope of relief it can grant to the State.[102]

---

[99] *United States v. Sisson, supra* note 70.

[100] See *Huntington v. Pedersen*, 294 Neb. 294, 883 N.W.2d 48 (2016).

[101] *State v. Hense, supra* note 14.

[102] See *State v. McDermott, supra* note 89.

However, in a criminal case where the district court is sitting as an appellate court in an appeal brought by the defendant, the defendant was not placed legally in jeopardy in that appellate court; he or she effectively arrived at the district court on appeal already cloaked in jeopardy, having been placed legally in jeopardy by the county court. Such defendant was not placed legally in jeopardy by the district court, and our orders effectuating relief where the district court was sitting as an appellate court are not circumscribed by the statutory limitation in § 29-2316. To the extent that our decision in *Schall*[103] misinterpreted the meaning of the "trial court" in its jurisdictional analysis, we disapprove of its interpretation.

[25] In sum, under the language of § 29-2316, when an exception proceeding is before the Nebraska Supreme Court or Court of Appeals from the district court where the trial took place in district court, § 29-2316 restricts the scope of any ruling directed at the defendant and district court. But under the language of § 29-2316, where the district court is sitting as an appellate court the defendant was not placed in jeopardy in that court, and the limitations of § 29-2316 do not apply to dispositions or orders directed at the district court.

Historically, although our language was sometimes less than precise, we ordinarily followed the foregoing principles in cases before us with respect to exception proceedings challenging the rulings of the district court sitting as an appellate court. In cases such as *State v. Schaf*[104] which were docketed as exception proceedings taken from the district court sitting as an appellate court, although we referred in our opinion to the matter before us as an "appeal," we granted relief in addition to pronouncing the correct law. Thus, historically, in

---

[103] *State v. Schall, supra* note 15.

[104] *State v. Schaf*, 218 Neb. 437, 355 N.W.2d 793 (1984). But see *State v. Golgert, supra* note 33; *State v. Merithew*, 220 Neb. 530, 371 N.W.2d 110 (1985); and *State v. Wilkinson*, 219 Neb. 685, 365 N.W.2d 478 (1985) (sustaining exception).

exception proceedings, we recognized that § 29-2316 was not an impediment to correcting an erroneous determination of the district court sitting as an appellate court. As we have recently emphasized, the "Legislature has prescribed when a court may exercise appellate jurisdiction,"[105] and in the exercise of our appellate jurisdiction under §§ 29-2315.01 and 29-2316, correcting the district court sitting as an appellate court adheres to the language of § 29-2316.

In view of our analysis above holding that where an exception proceeding pursuant to § 29-2315.01 is taken from the district court sitting as an appellate court to the Nebraska Supreme Court or Court of Appeals, the disposition of the matter is not limited by the restrictive language of § 29-2316, we must overrule the dispositional portion of cases such as *Kleckner*[106] and *Figeroa*.[107]

Because the matter is before us as an exception proceeding under § 29-2315.01, the relief we can afford is controlled by § 29-2316. As we explain above, the defendant was not "placed legally in jeopardy" in the district court sitting as an appellate court, and therefore, § 29-2316 does not limit the relief in this case and we therefore vacate the ruling of the district court.

## VI. CONCLUSION

As we discussed above, the State seeking review of the district court's decision sitting as an appellate court in a criminal appeal brought to it by a defendant could have filed an appeal under §§ 24-204 and 25-1912. However, the State filed an exception proceeding under § 29-2315.01, for which we have historically recognized jurisdiction. Also, as we explained above, § 29-2316 does not limit the relief we can afford the State, where the matter is brought to us by the State from the district court sitting as an appellate court.

---

[105] *Heckman v. Marchio, supra* note 35, 296 Neb. at 464, 894 N.W.2d at 301.

[106] *State v. Kleckner, supra* note 33.

[107] *State v. Figeroa, supra* note 87.

Having analyzed the State's contention in this case that the district court sitting as an appellate court erred when it reversed Thalken's conviction, we find merit to the State's argument. Because the uncontroverted known facts showed that Thalken committed a traffic violation for failure to turn off his fog lights, in violation of § 60-6,225(2), there was probable cause for the traffic stop and the county court properly denied Thalken's motion to suppress. The district court, sitting as an appellate court, erred when it ruled to the contrary and vacated Thalken's conviction and sentence.

Because we are not prevented from granting relief under § 29-2316, we sustain the State's exception and reverse the district court's order which had reversed Thalken's conviction and sentence. Accordingly, we remand the cause to the district court with directions to reinstate and affirm Thalken's conviction and sentence.

EXCEPTION SUSTAINED, AND CAUSE
REMANDED WITH DIRECTIONS.

WRIGHT and KELCH, JJ., not participating in the decision.