Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/18/2025 09:09 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
TINA M. SANCHEZ, APPELLANT.

___ N.W.3d ___

Filed March 11, 2025.    No. A-24-636.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Trial: Investigative Stops: Warrantless Searches: Appeal and Error.** The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge.

3. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle.

4. ____: ____: ____: ____. In reviewing a challenge to the legality of an automobile stop, the question is not whether the officer issued a citation for a traffic violation or whether the State ultimately proved the violation; instead, a stop of a vehicle is objectively reasonable when the police officer has probable cause to believe that a traffic violation has occurred.

5. **Motor Vehicles.** Pursuant to the language of Neb. Rev. Stat. § 60-6,161 (Reissue 2021), no person shall turn onto a roadway without signaling the turn. This is true whether the vehicle is initiating the turn from a private parking lot or from another roadway.

6. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** Probable cause to stop a vehicle is analyzed under an objective reasonableness standard, and thus, an officer's subjective intent or motivation is not relevant.

7. **Investigative Stops: Motor Vehicles.** As long as a traffic violation occurred, any purported ulterior motive for the stop is irrelevant.

Appeal from the District Court for Scotts Bluff County: Andrea D. Miller, Judge. Affirmed.

Michael W. Meister, Scotts Bluff County Public Defender, for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

Riedmann, Chief Judge, and Bishop and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

After a stipulated bench trial in the district court for Scotts Bluff County, Tina M. Sanchez was convicted of possession of a controlled substance (methamphetamine) with intent to distribute, failure to affix a drug tax stamp, possession of drug paraphernalia, and possession of an open alcoholic container in a vehicle. Sanchez appeals her convictions. On appeal, she alleges that the district court erred in denying her motion to suppress the evidence found in the course of a traffic stop of the vehicle in which she was a passenger. For the reasons set forth herein, we affirm the district court's decision to overrule the motion to suppress.

## BACKGROUND

In the early morning hours of November 2, 2023, Deputy Anthony Osborn of the Scotts Bluff County Sheriff's Department and Officer Tyler Weber of the Scottsbluff Police Department were on duty and in the same vicinity as one another. The two law enforcement officers were speaking with

each other on the telephone when Osborn observed a silver Chevrolet Avalanche pickup truck pull out of the parking lot of a local gas station onto East Overland Street in Scottsbluff, Nebraska, without first signaling its turn. Osborn relayed this information to Weber, because he knew Weber was driving on East Overland Street.

Weber caught up to the pickup truck and initiated a traffic stop based upon Osborn's observation of the truck's turning onto the roadway without first signaling the turn. The occupants of the truck, including Sanchez (the registered owner of the truck and its back seat passenger), each had a history of drug-related offenses. As such, during the course of the traffic stop, Weber employed his certified drug detection dog to sniff for narcotics around the vehicle. The dog alerted near the rear passenger door, and the vehicle was then searched. In Sanchez' purse, a bag of suspected methamphetamine, a digital scale with white residue, and an open bottle of whiskey were discovered. Subsequent testing of the substance found in Sanchez' purse revealed that it was 10.63 grams of methamphetamine. When Sanchez was interviewed by law enforcement officers, she admitted that she had recently started dealing methamphetamine and that she also used it herself on a daily basis. Notably, the driver of the vehicle was issued a written warning for a turn signal violation.

On November 14, 2023, the State filed an information charging Sanchez with four counts: possession of a controlled substance (methamphetamine) with intent to distribute, a Class ID felony; failure to affix a drug tax stamp, a Class IV felony; possession of drug paraphernalia, an infraction; and possession of an open alcoholic container in a vehicle, also an infraction. Sanchez filed a motion to suppress, asking the court to suppress all evidence obtained as a result of the search of the vehicle during the traffic stop. Sanchez alleged, "There was no traffic violation that occurred thus the stop was illegal and thus violates [Sanchez'] Constitutional protection against unreasonable seizures . . . ."

During the hearing on Sanchez' motion to suppress, Osborn testified about his observation of the pickup truck turning from the parking lot onto the roadway without first signaling the turn. He also indicated that he followed Weber and the pickup truck and participated in the traffic stop and the search of the vehicle.

Weber testified that prior to initiating the traffic stop of the pickup truck, he had observed the truck in various locations throughout the night. First, he saw the pickup truck parked across the street from a residence "known for illicit drug activity." Shortly thereafter, he observed the truck leaving a hotel parking lot in Scottsbluff. Then, Weber saw the truck arrive at the gas station parking lot. At around that same time, Weber observed "multiple people [he] recognized from prior encounters involving narcotics" at that gas station.

During cross-examination, Weber testified that he had not directly observed the pickup truck turning from the parking lot onto the roadway without first signaling the turn. Instead, he relied on Osborn's observations. Weber also conceded that he did not have a warrant to search the vehicle.

After the presentation of evidence at the suppression hearing, Sanchez' counsel argued that the Nebraska statutes do not require a person to signal a turn from a private parking lot onto a roadway. As such, counsel asserted that there was no traffic violation to justify Weber's initiating a traffic stop of the vehicle. Additionally, counsel argued that Weber was looking for any reason to stop the vehicle because he "thought he was going to get a drug bust."

The district court denied Sanchez' motion to suppress. The court found that "[f]ailing to use a turn signal is a well recognized traffic violation." The court went on to find that pursuant to the language of Neb. Rev. Stat. § 60-6,161 (Reissue 2021), "a turn signal is required when exiting the gas station parking lot onto the roadway of East Overland." The court concluded:

The testimony is Deputy Osborne [sic] witnessed the vehicle turn onto East Overland without a turn signal. This is probable cause sufficient to believe that a traffic violation has occurred and thus the officers are justified in stopping the vehicle and investigating the traffic violation. The Motion to Suppress is therefore overruled.

A stipulated bench trial was held on May 13, 2024. The State offered two exhibits, including a transcript of the motion to suppress hearing and a stipulation. As a part of the stipulation, Sanchez preserved "her objections made at the time of the hearing on the Motion to Suppress and preserves her continuing objection." Sanchez indicated that she "would rest without presenting any affirmative evidence."

Our record does not include any specific finding of guilt by the district court. However, based on the subsequent sentencing order and the admissions of the parties in their briefs to this court, it appears clear that Sanchez was convicted of all four counts alleged in the information. The court sentenced her as follows: 3 to 5 years' imprisonment on her conviction for possession of a controlled substance (methamphetamine) with intent to deliver; 12 to 18 months' imprisonment on her conviction for failure to affix a drug tax stamp; and a $100 fine on each of her convictions for possession of drug paraphernalia and possession of an open alcoholic container in a vehicle. The sentence for count II was ordered to run concurrently with the sentence for count I.

Sanchez appeals her convictions here.

## ASSIGNMENTS OF ERROR

On appeal, Sanchez asserts generally that the district court erred in denying her motion to suppress. Specifically, she asserts that the district court erred in (1) finding that the driver of the vehicle violated § 60-6,161 and that, as a result, the traffic stop was justified and (2) finding that the traffic stop was not "pretextual."

## STANDARD OF REVIEW

[1,2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Shiffermiller*, 302 Neb. 245, 922 N.W.2d 763 (2019). Regarding historical facts, we review the trial court's findings for clear error. *Id*. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Shiffermiller, supra*. The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *Id*.

## ANALYSIS

On appeal, Sanchez argues that the district court erred in failing to grant her motion to suppress evidence for the reason that the vehicle she was riding in was not lawfully stopped.

[3,4] A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Jasa*, 297 Neb. 822, 901 N.W.2d 315 (2017). In reviewing a challenge to the legality of an automobile stop, the question is not whether the officer issued a citation for a traffic violation or whether the State ultimately proved the violation; instead, a stop of a vehicle is objectively reasonable when the police officer has probable cause to believe that a traffic violation has occurred. *Id*.

Section 60-6,161 provides in pertinent part: "No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal . . . ." Roadway is defined in Neb. Rev. Stat. § 60-656 (Reissue 2021) as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder." Taken together, failing to give an appropriate signal

prior to turning a vehicle upon a roadway is a traffic violation and Weber had the legal right to stop the pickup truck if he had probable cause to believe the pickup truck did not signal such a turn. Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances. *State v. Seckinger*, 301 Neb. 963, 920 N.W.2d 842 (2018).

Here, Osborn testified that he observed the pickup truck turn from the gas station parking lot onto East Overland Street without first signaling the turn. Upon relaying this information to Weber, Weber initiated a traffic stop of the pickup truck. Despite Osborn's observation, however, Sanchez argues that the failure to signal the turn from the gas station parking lot onto the street was not, in fact, a violation of § 60-6,161:

> To be found in violation of [§] 60-6,161 one must fail to signal while they are driving upon a publicly maintained roadway. In the instant case, the [pickup truck] was on the private property of [the gas station] and was not upon a "roadway." . . . As there was no requirement to signal a turn coming out of the [gas station] parking [l]ot there was no traffic violation and the traffic stop effected by Officer Weber was illegal.

Brief for appellant at 9. The district court disagreed with Sanchez' reading of the language of § 60-6,161. In its order overruling the motion to suppress, the court explained:

> Upon exiting the [gas station parking lot], the [pickup truck] enters on a roadway thus making [§] 60-6,161 (1) applicable and requiring a turn signal to turn a vehicle upon the roadway. Essentially if a vehicle is leaving the parking lot of [the gas station] going right or left, it is considered "turning a vehicle" upon a roadway and a signal is needed.

[5] Upon our careful reading of the language of § 60-6,161, we agree with the district court that the statute provides that no person shall turn onto a roadway without signaling the turn. This is true whether the vehicle is initiating the turn from a private parking lot or from another roadway. As the

State asserts in its brief to this court, "under § 60-6,161(1), it does not matter where the turn was made from, because § 60-6,161(1) prohibits 'turn[ing] a vehicle [] upon a roadway [] without giving an appropriate [turn] signal.'" Brief for appellee at 9. Here, the vehicle Sanchez was a passenger in turned from the gas station parking lot onto a roadway. As such, the vehicle necessarily completed the turn "upon a roadway." See § 60-6,161(1). Because such turn was not preceded or accompanied by a turn signal, the driver of the vehicle committed a traffic violation.

Sanchez does not cite us to any Nebraska case law to support her reading of § 60-6,161, and our independent review of the case law has also not revealed any support for Sanchez' position. However, as cited in the State's brief, the U.S. District Court for the District of Kansas reached the same conclusion as the district court in this case when it examined whether motorists turning onto a public roadway from a private roadway must activate their turn signal. See *U.S. v. Callarman*, No. 00-40056-01-DES, 2000 WL 1466695 (D. Kan. Sept. 13, 2000). Notably, the Kansas statute requiring a vehicle to signal a turn upon a roadway is almost identical to the language of § 60-6,161. In *U.S. v. Callarman*, 2000 WL 1466695 at *5, the federal district court explained that the moment a vehicle breaches the plane separating the parking lot from the roadway, the vehicle is commencing a turn "'upon a roadway.'" As such, the court found that when a vehicle turns from a parking lot onto a roadway, a turn signal must precede the turn or there will be a traffic violation.

Upon our review, we conclude that the vehicle in which Sanchez was a passenger failed to signal its turn from the gas station parking lot onto East Overland Street. Such failure was a traffic violation pursuant to the language of § 60-6,161, and Weber had probable cause to initiate a traffic stop. Sanchez' assertions to the contrary are without merit.

[6,7] For the sake of completeness, we address Sanchez' additional argument that Weber's use of the traffic signal

violation was a pretextual reason to initiate the traffic stop and that the real reason for the stop was his motivation to arrest the occupants of the vehicle for drug possession. Nebraska case law clearly provides that probable cause to stop a vehicle is analyzed under an objective reasonableness standard, and thus, an officer's subjective intent or motivation is not relevant. See, e.g., *State v. Thalken*, 299 Neb. 857, 911 N.W.2d 562 (2018). As long as a traffic violation occurred, any purported ulterior motive for the stop is irrelevant. *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012). As we found above, the vehicle Sanchez was a passenger in committed a traffic violation when it failed to signal its turn from the parking lot onto a roadway. Weber had probable cause to initiate the traffic stop.

## CONCLUSION

We affirm the decision of the district court to deny Sanchez' motion to suppress, and we affirm her convictions.

AFFIRMED.